IN THE MATTER OF:  THE DENIAL OF NC IDEA'S REFUND OF SALES AND USE TAX
FOR THE PERIOD JANUARY 1, 2003 THROUGH JUNE 30, 2003 BY THE SECRE-
TARY OF REVENUE OF NORTH CAROLINA

No. COA08-561

(Filed 21 April 2009)

**Taxation— appeal to superior court—standard of review—
mixed law and fact**

The trial court erred by applying a pure de novo standard of review to a review of the Tax Review Board that involved issues of law and fact. Moreover, the trial court's review erroneously rests on a factual basis which is either inconsistent with or not contained in the agency findings. The matter was remanded, given the complexity of the record and that the parties were heard on issues that remain unresolved.

**IN RE DENIAL OF N.C. IDEA'S REFUND**

[196 N.C. App. 426 (2009)]

Appeal by the Secretary of Revenue of North Carolina from judgment entered 8 February 2008 by Judge Howard E. Manning, Jr., Wake County Superior Court. Heard in the Court of Appeals 10 February 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Gregory P. Roney, for Appellant.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Elizabeth V. LaFollette and William G. McNairy, for Appellee.*

ERVIN, Judge.

The North Carolina Secretary of Revenue (Appellant) appeals from a judgment entered in Wake County Superior Court on 8 February 2008 reversing the 1 November 2006 decision by the Tax Review Board in Administrative Decision No. 498. The Tax Review Board's decision affirmed the Assistant Secretary of Revenue's conclusion that NC IDEA is not a charitable organization and was not, therefore, entitled to sales and use tax refunds pursuant to N.C. Gen. Stat. § 105-164.14(b)(3). We reverse and remand this case to the trial court for further proceedings not inconsistent with our decision.

NC IDEA was incorporated on 28 May 2002. On 24 July 2003, NC IDEA filed a non-profit and governmental entity claim for semiannual refunds of the sales and use taxes paid on direct purchases of tangible personal property for use in carrying on charitable operations. On 16 January 2004, the Department of Revenue notified NC IDEA that it was not eligible to receive the requested refund. NC IDEA protested the Department of Revenue's decision and filed an application for a hearing with the Department of Revenue.

In August 2005, Assistant Secretary of Revenue Eugene J. Cella (Assistant Secretary) heard NC IDEA's protest of the denial of its claim for refund of sales and use tax for the period of 1 January 2003 through 30 June 2003. The question before the Assistant Secretary of Revenue was whether NC IDEA was a non-profit entity pursuant to N.C. Gen. Stat. § 105-164.14(b). The final decision of the Secretary of Revenue contained the following pertinent findings of fact:

13. Taxpayer conducts lobbying activities.

14. Taxpayer paid one lobbying firm, Barfield Associates, $352,865 in its 2002 fiscal year and $290,439 in its 2003 fiscal year.

**IN RE DENIAL OF N.C. IDEA'S REFUND**

[196 N.C. App. 426 (2009)]

15. During its 2003 fiscal year, the Taxpayer's president devoted 10% to 20% of his time to lobbying activities.

. . . .

22. During the period at issue in the Claim for Refund, Taxpayer conducted two primary businesses: (1) venture capital investing ("VC") and (2) research and development ("R&D") under contracts to design or construct computer software systems and electronic systems.

. . . .

26. Taxpayer owns and manages two venture capital funds: (1) MCNC Ventures, LLC, (100% owned by Taxpayer) and (2) MCNC Enterprise Fund, LP (owned approximately 49% by Taxpayer, 50% by MCNC, and 1% by MCNC Ventures, LLC).

27. Taxpayer acts as the management company for both entities, and the Taxpayer's activities include the management of both entities.

28. Taxpayer's VC investing is not limited to any geographic area and is not limited to any charitable class.

29. The VC activities are dedicated to profitability where the Taxpayer, like any for-profit investor, will invest money, take preferred stock or convertible preferred debt, and seek a profitable exit opportunity.

30. Taxpayer's VC investing is a for-profit operation investing in the same businesses as other for-profit corporations and providing "traditional" VC funding.

31. Taxpayer conducts commercial VC investing.

32. Taxpayer competes with other for-profit companies for VC funding opportunities.

33. Taxpayer's R&D services were purchased by many for-profit, corporate customers.

34. Taxpayer is not conducting and disseminating fundamental research for public benefit.

35. Taxpayer's R&D services service commercial and industrial operations to design, construct, and commercialize products.

. . . .

42. Taxpayer's R&D operations are commercial and have the goal to produce commercial products.

43. Taxpayer competes with other for-profit companies for R&D contracts.

Based on these and other findings of fact, the Secretary of Revenue reached certain conclusions, some of which are more properly delineated as findings of fact, including the following determinations:

17. Taxpayer's objective is to create profitable, commercial products with its R&D activities or make profitable VC investments.

18. Taxpayer did not use its tangible property to carry on a charitable purpose because Taxpayer had a commercial, profit-driven purpose.

19. Taxpayer lacks a humane and philanthropic objective.

20. Taxpayer's VC activities benefit the commercial businesses that receive funding from Taxpayer.

21. Taxpayer's R&D activities benefit the commercial businesses that employ Taxpayer to help commercialize their products.

22. Neither the R&D nor the VC investing benefit a broad charitable class.

23. Taxpayer operates both VC and R&D to maximize commercial gain.

. . . .

28. Taxpayer's VC funding benefits private companies and competes with other sources of financing for private businesses.

29. Taxpayer's R&D activities are conducted for compensation, focus on research contracts to design and build commercial products, and the results are not freely disseminated.

30. Taxpayer's lobbying activities are not charitable.

31. Taxpayer does not offer its facilities for public use.

32. Taxpayer's primary activities do not provide a public benefit.

33. Taxpayer operates like a private business seeking to make profits from VC and R&D activities.

Based on these and other findings and conclusions, the Assistant Secretary concluded that "[t]he level of charitable activity required to meet the definition of a charitable organization under North Carolina law exceeds that found among the general population of commercial businesses which often make efforts to help the community;" that "[a] charitable organization must primarily operate to further its charitable purpose and not substantially operate to further non-charitable purposes;" that "Taxpayer's VC, R&D, and lobbying activities are substantial, while its grant making and educational activities are insubstantial;" and that "[a]ny incidental benefits to the community from the Taxpayer's VC or R&D are not charitable and are commercial." As a result, the Assistant Secretary concluded that NC IDEA did not qualify for a refund of sales and use tax as a charitable organization pursuant to N.C. Gen. Stat. § 105-164.14(b)(3).[1]

NC IDEA sought review of the Assistant Secretary's decision by the Tax Review Board. "[A]fter conducting an administrative hearing in this matter during which [NC IDEA] appeared and presented oral argument through counsel," the Tax Review Board concluded in Administrative Decision No. 498, which was entered on 1 November 2006, that "the findings of fact made by the Assistant Secretary were supported by competent evidence in the record[;] that[,] based upon the findings of fact, the Assistant Secretary's conclusions of law were fully supported by the findings of fact[;] . . . that the final decision of the Assistant Secretary was supported by the conclusions of law[;]" and "that the Assistant Secretary's final decision is AFFIRMED."

NC IDEA sought judicial review of the Tax Review Board's decision in the Superior Court of Wake County on 1 December 2006. The Secretary of Revenue filed a response to NC IDEA's petition for judicial review on 2 January 2007. After reviewing the administrative record and the briefs submitted by the parties and after hearing oral argument on 6 July 2007, the trial court entered a Judgment and Order reversing the Tax Review Board's decision on 8 February 2008.

In its Judgment and Order, the trial court initially reviewed the procedural history of this matter and then discussed the applicable

---

1. N.C. Gen. Stat. § 105-164.14(b)(3) (2007) states that "[a] nonprofit entity . . . is allowed a semiannual refund of sales and use taxes paid by it under this Article on direct purchases of tangible personal property and services[.]" Included in the list of nonprofit entities entitled to a refund are the following: "Churches, orphanages, and other charitable or religious institutions and organizations not operated for profit." We also note that this section was repealed by Session Laws 2008-107, s. 28.22(a), effective 1 July 2008, and applicable to purchases made on or after that date.

standard of review. The trial court concluded, in reliance on the decision of this Court in *Vanderburg v. N.C. Dep't of Revenue*, 168 N.C. App. 598, 608-09, 608 S.E.2d 831, 839 (2005), that the Tax Review Board's decision was subject to *de novo* review. After stating that most of the facts are not in dispute and that, "[t]o the extent factual disputes exist, the Court has reviewed the facts in the light most favorable to the Department of Revenue," the trial court proceeded to specify what, in its opinion, the record evidence established.

According to the trial court, "the record clearly show[ed] that" "NC IDEA and its predecessor, MCNC Research & Development Institute ("MCNC-RDI") exist for the sole purpose of promoting economic development in North Carolina by attracting, forming, growing, and retaining microelectronic, wireless, networking, and related technology businesses in North Carolina;" that NC IDEA's "original purpose of promoting economic development in the microelectronic and other high technology industries for the benefit of the people and State of North Carolina has remained constant;" that, "[a]lthough [NC IDEA] has operated as a venture capital company that invests in small technology companies," it had never "operate[d] as a for-profit corporation;" that NC IDEA "has consistently remained a non-profit corporation that seeks to inject funds into nascent companies so that they in turn can grow and become successful and benefit the State of North Carolina and its people by creating jobs and tax revenues;" that, "even though [NC IDEA] looks to make a profit and get a return on investments, the so-called 'profit' made provides funds that can be invested back into growing technology companies in North Carolina and does not inure to the benefit of any individual or for-profit entity;" that "the stated intent and purpose of [NC IDEA] is economic development to create jobs and benefit the people and economy of North Carolina;" and that "the manner in which [NC IDEA] accomplished its objectives does not detract from its charitable nature." The trial court further concluded "as a matter of law, based on the undisputed evidence and taking the disputed evidence in the light most favorable to the Department of Revenue, that [NC IDEA's] economic development activities, carried out by its research and development and venture capital activities," during and after the Refund Period "promote social welfare, lessen the burdens of government, aid the citizens of North Carolina, and dispense public good;" that these "are charitable purposes within the meaning of" N.C. Gen. Stat. § 105-164.14(b)(3); and that NC IDEA "has . . . satisfied its burden of demonstrating that it is entitled to sales and use tax refunds pursuant to [N.C. Gen. Stat.] § 105-164.14(b)(3) "for the Refund Period." As a

IN RE DENIAL OF N.C. IDEA'S REFUND

[196 N.C. App. 426 (2009)]

result, the trial court reversed the decision of the Tax Review Board. From this judgment, the Department of Revenue appeals.

On appeal, the Secretary contends that the trial court erred by applying an incorrect standard of review. We agree with the Secretary, reverse the trial court's judgment, and remand this matter to the trial court for further proceedings not inconsistent with this opinion.

Judicial review of the final decision of an administrative agency in a contested case is governed by section 150B-51(b) of the Administrative Procedures Act (APA). N.C. Gen. Stat. § 150B-51(b) (2007). According to well-established law, it is the responsibility of the administrative body, not the reviewing court, "to determine the weight and sufficiency of the evidence and the credibility of the witnesses, to draw inferences from the facts, and to appraise conflicting and circumstantial evidence." *Comr. of Insurance v. Rate Bureau*, 300 N.C. 381, 406, 269 S.E.2d 547, 565 (1980). In other words, "[w]hen the trial court exercises judicial review over an agency's final decision, it acts in the capacity of an appellate court." *N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 662, 599 S.E.2d 888, 896 (2004).

During judicial review of an administrative agency's final decision, the substantive nature of each assignment of error dictates the standard of review. *ACT-UP Triangle v. Commission for Health Services*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997). According to the relevant provisions of the APA, an agency's final decision may be reversed or modified only if the reviewing court determines that the petitioner's substantial rights might have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary, capricious, or an abuse of discretion.

IN RE DENIAL OF N.C. IDEA'S REFUND

[196 N.C. App. 426 (2009)]

N.C. Gen. Stat. § 150B-51(b) (2007). The first four grounds for reversing or modifying an agency's decision—that the decision was "in violation of constitutional provisions," "in excess of the statutory authority or jurisdiction of the agency," "made upon unlawful procedure," or "affected by other error of law," N.C. Gen. Stat. § 150B-51(b)(1)-(4)—are "law-based" inquiries. *Carroll*, 358 N.C. at 659, 599 S.E.2d at 894. The final two grounds—that the decision was "unsupported by substantial evidence . . . in view of the entire record" or "arbitrary or capricious," N.C. Gen. Stat. § 150B-51(b)(5),(6)—involve "fact-based" inquiries. *Carroll*, 358 N.C. at 659, 599 S.E.2d at 894.

In cases appealed from administrative agencies, "[q]uestions of law receive *de novo* review," whereas fact-intensive issues "such as sufficiency of the evidence to support [an agency's] decision are reviewed under the whole-record test." *In re Appeal of the Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003). Specifically, in cases where the gravamen of an assigned error is that the agency is subject to reversal under subsections 150B-51(b)(1), (2), (3), or (4) of the APA, a court engages in *de novo* review. *See Meads v. N.C. Dep't of Agric.*, 349 N.C. 656, 665, 670, 509 S.E.2d 165, 171 (1998). However, where the substance of the alleged error involves an allegation that the agency's decision should be overturned pursuant to subsections 150B-51(b)(5) or (6), the reviewing court must apply the "whole record test." *See Carroll*, 358 N.C. at 659, 599 S.E.2d at 894.

Under the *de novo* standard of review, the trial court "consider[s] the matter anew[] and freely substitut[es] its own judgment for the agency's[.]" *Mann Media, Inc. v. Randolph County Planning Bd.*, 356 N.C. 1, 13, 565 S.E.2d 9, 17 (2002). When the trial court reviews an administrative decision under the whole record test, it "may not substitute its judgment for the agency's as between two conflicting views, even though it could reasonably have reached a different result had it reviewed the matter *de novo*." *Watkins v. N.C. State Bd. of Dental Exam'rs*, 358 N.C. 190, 199, 593 S.E.2d 764, 769 (2004). In conducting "whole record" review, the trial court must examine all the record evidence in order to determine whether there is substantial evidence to support the agency's decision. *Id.* "Substantial evidence" is "relevant evidence a reasonable mind might accept as adequate to support a conclusion." N.C. Gen. Stat. § 150B-2(8b) (2007).

This Court's review of "a superior court order entered upon review of an administrative agency decision, . . . [involves a] two-fold

task: (1) [to] determine whether the trial court exercised the appropriate scope of review and, if appropriate; (2) [to] decide whether the court did so properly." *County of Wake v. N.C. Dep't of Env't & Natural Res.*, 155 N.C. App. 225, 233-34, 573 S.E.2d 572, 579 (2002) (quotation omitted). In performing this task, this Court need only consider "those grounds for reversal or modification argued by the petitioner before the superior court and properly assigned as error on appeal to this Court." *Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 675, 443 S.E.2d 114, 118 (1994) (quotation omitted).

After careful consideration of the record, we agree with the Secretary that the trial court applied an incorrect standard of review in its examination of the Assistant Secretary's decision, which the Tax Review Board affirmed without significant further discussion. The essence of NC IDEA's appeal to the superior court appears to have been that the Assistant Secretary erred by making incomplete and inaccurate factual findings and by applying an incorrect legal standard to the properly found facts. Rather than subjecting the Assistant Secretary's decision to pure *de novo* review, the trial court should have examined the Assistant Secretary's decision in order to ascertain (1) whether the factual findings made by the Assistant Secretary were supported by substantial evidence in view of the whole record, N.C. Gen. Stat. § 105-B-51(b)(5); (2) whether the Assistant Secretary failed to make findings of fact addressing any material issue arising on the evidentiary record, N.C. Gen. Stat. § 150B-51(b)(4); (3) whether the Assistant Secretary's legal conclusions embodied a correct understanding of the applicable law, N.C. Gen. Stat. § 150B-51(b)(4); and (4) whether the Assistant Secretary's factual findings supported his ultimate legal conclusion that NC IDEA was not entitled to a refund of sales and use tax payments pursuant to former N.C. Gen. Stat. § 105-164.14(b)(3) because it did not qualify as a "charitable . . . organization not operated for profit." N.C. Gen. Stat. § 150B-51(b)(4). Since not all of these steps involved the resolution of "law-based" issues properly subject to *de novo* review, the trial court erred by reviewing the Tax Review Board's decision under that standard of review.

The trial court's review of the Tax Review Board's decision to affirm the Assistant Secretary's determination on a *de novo* basis appears to have resulted in the commission of a more specific error: A trial court reviewing an agency decision may not engage in independent fact-finding. *See Carroll*, 358 N.C. at 662, 599 S.E.2d at 896.

In other words, a reviewing court may not independently weigh the record evidence or substitute its evaluation of the evidence for that of the adjudicating agency. *In re Appeal of AMP, Inc.*, 287 N.C. 547, 561-62, 215 S.E.2d 752, 761 (1975). As a result, the principal duty of a reviewing court in examining an administrative agency's factual findings involves evaluating all the evidence for the purpose of determining whether the agency's findings have a "rational basis" in the record. *In re Rogers*, 297 N.C. 48, 65, 253 S.E.2d 912, 922 (1979).

As we have already noted, the trial court attempted to specify the facts that the "undisputed evidence and . . . [the] disputed evidence [taken] in the light most favorable to the Department of Revenue" tended to show. However, the trial court's recitation of the applicable facts cannot be reconciled with the factual findings made by the Assistant Secretary.

For example, the trial court stated that "NC IDEA and its predecessor, MCNC Research & Development Institute ("MCNC-RDI") exist for the sole purpose of promoting economic development in North Carolina by attracting, forming, growing, and retaining microelectronic, wireless, networking, and related technology businesses in North Carolina." After careful review, we have not found any language in the Assistant Secretary's findings of fact that addresses the purpose for which NC IDEA was formed and is operated. However, the Assistant Secretary did find that "Taxpayer's VC investing is not limited to any geographic area and is not limited to any charitable class," a finding which may be inconsistent with the trial court's determination that NC IDEA's efforts are focused on North Carolina-based economic development activities.

Furthermore, the trial court stated that the evidence tended to show that, while NC IDEA "has operated as a venture capital company that invests in small technology companies, it did not during the Refund Period, nor does it now, operate as a for-profit corporation." On the contrary, the trial court indicated that NC IDEA "has consistently remained a non-profit corporation that seeks to inject funds into nascent companies so that they in turn can grow and become successful and benefit the State of North Carolina and its people by creating jobs and tax revenues." Although the Assistant Secretary does not appear to have addressed NC IDEA's ultimate goals in his findings of fact, he did determine that "[t]he VC activities are dedicated to profitability where the Taxpayer, like any for-profit investor, will invest money, take preferred stock or convertible preferred debt, and seek a profitable exit opportunity;" that "Taxpayer's VC investing

IN RE DENIAL OF N.C. IDEA'S REFUND

[196 N.C. App. 426 (2009)]

is a for-profit operation investing in the same businesses as other for-profit corporations and providing 'traditional' VC funding;" that "Taxpayer conducts commercial VC investing;" that "Taxpayer competes with other for-profit companies for VC funding opportunities;" that "Taxpayer is not conducting and disseminating fundamental research for public benefit;" that "Taxpayer's R&D services serve commercial and industrial operations to design, construct, and commercialize products;" that "Taxpayer's R&D operations are commercial and have the goal to produce commercial products;" and that "Taxpayer competes with other for-profit companies for R&D contracts." Once again, these findings of fact are, arguably, inconsistent with the trial court's view of the undisputed evidence and the evidence taken in the light most favorable to the Department.

Finally, the trial court stated that "the undisputed evidence" and the "disputed evidence [viewed] in the light most favorable to the Department of Revenue" indicated that, despite the fact that NC IDEA "looks to make a profit and get a return on investments, the so-called 'profit' made provides funds that can be invested back into growing technology companies in North Carolina and does not inure to the benefit of any individual or for-profit entity;" that "the stated intent and purpose of [NC IDEA] is economic development to create jobs and benefit the people and economy of North Carolina;" and that, "in this case, the manner in which [NC IDEA] accomplished its objectives does not detract from its charitable nature." Once again, the Assistant Secretary's findings of fact do not contain a discussion of the treatment of the "profit" that NC IDEA earns by virtue of its activities. In addition, the Assistant Secretary's findings, as quoted in detail above, tend to suggest that NC IDEA's operations cannot be meaningfully distinguished from those of a for-profit entity. Thus, this portion of the trial court's discussion of the evidentiary record is arguably inconsistent with the Assistant Secretary's findings of fact.

As this analysis suggests, it appears that the trial court's review of the Tax Review Board's affirmance of the Assistant Secretary's decision erroneously rests on a factual basis which is either inconsistent with or simply not contained within the Assistant Secretary's findings of fact. Put another way, the trial court's judgment is susceptible to the interpretation that the trial court engaged in impermissible independent factfinding during his review of the administrative agency's decision. Any determination that the trial court had the authority to disregard or supplement the administrative agency's factual determi-

nations would be inconsistent with the applicable standard of review and rest upon a misapplication of governing law.

When an "order or judgment appealed from was entered under a misapprehension of the applicable law," an appellate court may remand for application of the correct legal standards. *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 469, 597 S.E.2d 674, 693 (2004). "The trial court's erroneous application of the standard of review does not automatically necessitate remand[,]" *Carroll*, 358 N.C. at 666, 599 S.E.2d at 898, if the "court [may] reasonably determine from the record whether the petitioner's asserted grounds for challenging the agency's final decision warrant reversal or modification of that decision under the applicable provisions of N.C.G.S. § 150B-51(b)[.]" *Id.*

Here, however, the trial court's erroneous application of a *de novo* standard of review necessitates remand for further proceedings in the court below. Although the suggestion was made at oral argument that this Court should proceed to conduct an appropriate review of the Tax Review Board's decision to affirm the Assistant Secretary's determination based on the existing administrative record, we do not believe that we should act in that manner. First, the scope of this Court's review is limited to "those grounds for reversal or modification . . . assigned as error on appeal to this Court." *Amanini*, 114 N.C. App. at 675, 443 S.E.2d at 118 (quotation omitted). Given the procedural posture of this case, there are no specific assignments of error directed to the Assistant Secretary's findings of fact and conclusions of law upon which we could base such independent review of the Assistant Secretary's decision. Secondly, and even more importantly, we have not had the benefit of briefing and argument directed toward the sufficiency of the Assistant Secretary's findings of fact and conclusions of law. Given the complexity of the record in this matter and the fact that the parties have not had an opportunity to be heard before this Court with respect to the issues which remain unresolved, we conclude that we should remand this case to the superior court for further proceedings not inconsistent with this opinion.

Thus, we hold that the trial court failed to apply the appropriate standard of review in examining the Tax Review Board's Administrative Decision No. 498 affirming the Assistant Secretary's decision to deny NC IDEA's request for a sales and use tax refund. Accordingly, the decision of the trial court is reversed and the case is remanded to the trial court for further review of the Tax Review Board's decision

in light of the appropriate standard of review. If the trial court deems it necessary, after further review of the Tax Review Board's decision, the court may further remand this case to the Secretary of Revenue for the purpose of making further findings of fact and conclusions of law.[2]

REVERSED and REMANDED.

Judges WYNN and STEPHENS concur.

---

2. The Court notes that the General Assembly abolished the Tax Review Board and created a new structure for adjudicating tax disputes at the administrative level, effective 1 January 2008. 2007 N.C. Sess. Laws 491.