HUNTER, JR., ROBERT N., Judge.
Salvatore Marsico and David Hand ("Petitioners") appeal from an order of the trial court affirming the New Hanover County Board of Education's decision to suspend Petitioners without pay. Petitioner Marsico was suspended for three days and Petitioner Hand was suspended for one day. For the following reasons, we affirm the trial court's order.
I. Factual & Procedural History
Salvatore Marsico is an assistant principal at E.A. Laney High School ("Laney High") in Wilmington. David Hand is the school social worker at Laney High. Hannah Jackson[1] is a special education student at Laney High who was enrolled in the school's Exceptional Children's Program ("EC"). As an EC student, Hannah had an Individualized Education Program ("IEP"). The State Board of Education sets forth the rules for IEPs. Pursuant to the rules, each IEP student is assigned an IEP team, which must include the student's parent, at least one regular education teacher, at least one special education teacher, a representative of the local educational authority ("LEA"), and, where appropriate, the student. All placement decisions, and modifications thereof, must be made by the IEP team. Hannah's IEP team consisted of: Caroline Jackson[2] (Hannah's mother), Marsico (General Education Teacher), Renee Ditz (Special Education Teacher), and Hand (LEA representative).
In December of 2013, Hannah was suicidal and failing her classes. On 13 December 2013, Marsico and Hand met with Jay Robinson, a Hospital/Homebound ("HH") instructor at Laney High, to discuss HH placement for Hannah. Robinson testified that during the meeting, Marsico, Hand, and Robinson realized Hannah had an IEP. At that point, according to Robinson, he stated they would need to reconvene the HH meeting with the rest of the IEP team. Two members of Hannah's IEP team were notpresent at the 13 December 2013 meeting: Ms. Jackson (Hannah's mother) and Renee Ditz. Robinson testified that Marsico nevertheless insisted he could drop Hannah from two of her classes so she could participate in HH.
After the 13 December 2013 meeting, Jason Bentzler, the chairperson of the EC Department at Laney High, spoke with both Marsico and Hand about the 13 December 2013 meeting, during which they decided to drop two of Hannah's classes and place her in HH. Bentzler testified, based on his conversation with Hand, he was under the impression that Hannah's mother was present during the 13 December 2013 meeting via telephone. Therefore, Bentzler thought the only person absent from Hannah's IEP team during the 13 December 2013 meeting was Ditz. Bentzler testified although he knew a proper IEP meeting had not been held, he asked Ditz to move forward with the paperwork to put Hannah in HH, so Hannah "could receive more services" prior to the Christmas holiday.[3] To that end, Bentzler asked Hand to give his notes from the 13 December 2013 meeting to Ditz, so she could move forward with the HH process.
Hand's notes dated 13 December 2013 are entitled "Notes for IEP Review Meeting for [Hannah Jackson]." Hand's notes indicate: "Present: [Caroline Jackson]-Parent, [Hannah Jackson], David Hand-SSW/Hosp-Home Coord, Sal Marsico, Jay Robinson." The second page of Hand's notes indicate: "Decisions: All agreed: H-H appropriate/necessary." The testimony is undisputed that neither Hannah nor her mother was present at the 13 December 2013 meeting to which Hand's notes refer. On 20 December 2013, after reviewing Hand's notes-believing she was the only member of the IEP team not present at the meeting-Ditz entered information into the school computer system indicating there had been an IEP meeting to discuss Hannah's placement in HH.[4]
In early January 2014, when HH instructor Robinson went to Hannah's home to deliver schoolwork, he discovered Ms. Jackson was unaware two of Hannah's classes had been dropped. This discovery prompted Robinson to report his concerns about the handling of Hannah's case to both Ditz and Patti Williams, the EC liaison for Laney High. Ultimately, Susan Hahn, the Director of Human Resources for the New Hanover County School System, initiated an investigation into the handling of Hannah's placement. Hahn created a report with her findings. Based on Hahn's report, as well as interviews of the teachers involved, the school superintendent recommended to the New Hanover County Board of Education ("the Board") that Marsico receive a three-day disciplinary suspension without pay and Hand receive a one-day disciplinary suspension without pay. Marsico and Hand both received letters to that effect dated 4 February 2014. The letter informed them of their right to request a hearing before the Board. They each requested a hearing.
On 12 March 2014, the Board held a consolidated hearing regarding the recommended discipline for Marsico and Hand. The Superintendent introduced testimony of seven witnesses, then each Petitioner testified on his own behalf. Both Petitioners testified they did not know Hannah had an IEP at the time of the 13 December 2013 meeting. Hand testified when he later learned Hannah had an IEP, he thencreated the document titled "Notes for IEP Review Meeting." Hand testified he subsequently gave those notes to Ditz with the intention that she use the notes to convene a proper IEP meeting herself. Marsico testified when he later found out Hannah had an IEP, he trusted Bentzler would handle the IEP meeting and he would have no further role in the process.
After the hearing, on 20 March 2014, the Board approved the Superintendent's recommended suspensions and made written findings in support thereof. The Board made its findings pursuant to N.C. Gen.Stat. § 115C-325(f)(2), which allows the Board to impose disciplinary suspensions without pay if the Board "concludes that the grounds for the recommendation are true and substantiated by a preponderance of the evidence." N.C. Gen.Stat. § 115C-325(f)(2) (2014). The Board made the following pertinent findings:
3. On December 13, 2013, David Hand called a meeting with Sal Marisco[5] and Jay Robinson to discuss a student, [Hannah Jackson].
4. At this meeting, the three participants discussed placing [Hannah Jackson] on Hospital/Homebound services because she was having suicidal thoughts and was failing her classes.
5. At that [13 December 2013] meeting, Jay Robinson told Sal Marisco and David Hand that [Hannah Jackson] had an Individualized Education Plan ("IEP") and that there needed to be an IEP meeting to change the student's placement to Hospital/Homebound.
6. .... Shortly thereafter, Mr. Marisco caused or allowed [Hannah Jackson's] schedule to be changed by dropping two (2) of her four (4) classes and caused or allowed her to be placed on Hospital/Homebound instruction, which resulted in a change of her educational placement.
7. At that meeting, or the next school day after the meeting, David Hand prepared handwritten notes containing the date of December 13, 2013 which stated that they were "Notes for IEP Review Mtg" for [Hannah Jackson] and listing as "present" the student's parent, the student, David Hand, Sal Marisco, and Jay Robinson.
8. Neither the parent nor the student were present at any meeting with Sal Marisco or David Hand on December 13, 2013.
9. ....
12. Sal Marisco took no steps after that to determine or ensure that a proper IEP meeting had been held for the student.
13. The meeting on December 13, 2013 was not a proper IEP meeting because all of the participants required by law to be present were in fact not present.
14. At the meeting on December 13, 2013, Sal Marisco knew or should have known by exercising reasonable diligence that there needed to be a proper IEP team meeting before [Hannah Jackson's] placement and schedule could be changed to Hospital/Homebound.
....
16. At the beginning of the 2013-2104[sic] school year, Jason Bentzler gave Sal Marisco a copy of the roster of students at Laney High School who had IEPs and advised him to check the roster before placing a student on Hospital/Homebound.
....
20. David Hand intentionally falsified notes from the December 13, 2013 meeting to make it look like an IEP meeting had taken place that day.
21. Sal Marsico failed to take the initiative to oversee Jason Bentzler and the other staff at Laney High School involved to ensure that proper procedures were followed.
Marsico and Hand appealed the decision of the Board to New Hanover County Superior Court pursuant to N.C. Gen.Stat. § 115C-325(n). The case was heard before the Honorable W. Allen Cobb, Jr. on 24 September 2014. On 30 September 2014, the trial court affirmed the decision of the Board, and made additional written findings.
II. Jurisdiction
Under N.C. Gen Stat. § 7A-27(b), an appeal of right directly to the Court of Appeals exists "[f]rom any final judgment of a superior court ... including any final judgment entered upon review of a decision of an administrative agency[.]" N.C. Gen.Stat. § 7A-27(b)(1) (2014).
III. Standard of Review
"When the trial court exercises judicial review over an agency's final decision, it acts in the capacity of an appellate court." N.C. Dep't of Env't & Natural Res. v. Carroll,358 N.C. 649, 662, 559 S.E.2d 888, 896 (2004) (citations omitted). "[T]he substantive nature of each assignment of error dictates the standard of review." In re Denial of NC IDEA's Refund of Sales,196 N.C.App. 426, 432, 675 S.E.2d 88, 94 (2009) (citation omitted). The superior court's standard of review of an agency decision is governed by N.C. Gen.Stat. § 150B-51(b) :
The court reviewing a final decision may affirm the decision or remand the case for further proceedings. It may also reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional provisions;
(2) In excess of the statutory authority or jurisdiction of the agency or administrative law judge;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
(6) Arbitrary, capricious, or an abuse of discretion.
N.C. Gen.Stat. § 150B-51(b) (2013).
The trial court reviews matters arising under N.C. Gen.Stat. § 150B-51(b)(1)(4)de novo. SeeN.C. Gen.Stat. § 150B-51(c) ; see also Carroll,358 N.C. at 659, 559 S.E.2d at 894-95. When reviewing matters under N.C. Gen.Stat. § 150B-51(b)(5)(6), the court conducts a fact-based review under the whole-record test. SeeN.C. Gen Stat. § 150-51(c); see also In re Denial of NC IDEA's Refund,196 N.C.App. at 433, 675 S.E.2d at 94. "In all actions brought in any court against a local board of education, the order or action of the board shall be presumed to be correct and the burden of proof shall be on the complaining party to show the contrary." N.C. Gen.Stat. § 115C-44(b) (2014).
Subsequently, "[w]hen an appellate court reviews a superior court order regarding [a board] decision, the appellate court examines the trial court's order for error of law." Moore v. Charlotte-Mecklenburg Bd. of Educ.,185 N.C.App. 566, 572-73, 649 S.E.2d 410, 415 (2007) (internal quotation marks and citations omitted). To that end, this Court's review is "a twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly." Amanini v. N.C. Dep't of Human Res.,114 N.C.App. 668, 675, 443 S.E.2d 114, 118-19 (1994) (citations omitted).
IV. Analysis
On appeal, Petitioners make three arguments. First, they argue the superior court "exceeded its authority" by making findings different from those made by the Board, yet affirming the Board's decision. Second, they argue the trial court erred by failing to reverse the decision of the Board. Third, Petitioners argue they were entitled to a hearing before an independent hearing officer on the Superintendent's recommendation for disciplinary suspension.
A. Judge Cobb's Findings
Although Judge Cobb was not required to explain the reasons for his decision to affirm the Board's action, see Area Mental Health Auth. v. Speed,69 N.C.App. 247, 250-51, 317 S.E.2d 22, 25 (1984), he did not "exceed his authority" by doing so. In accordance with our precedent, we will not consider Judge Cobb's findings in our appellate review. See Shepherd v. Consolidated Judicial Retirement Sys.,89 N.C.App. 560, 562, 366 S.E.2d 604, 605-06 (1988) ("[W]hen a superior court judge sits as an appellate court to review an administrative agency decision the judge is not required to make findings of fact.... If the superior court judge does make findings of fact and conclusions of law, these will not be considered in our appellate review."). Instead, we consider the administrative record and apply the standard of review appropriate for each assignment of error.
B. The Board's Decision to Suspend Petitioners Without Pay
Petitioners argue the trial court erred in affirming the Board's decision because the Board's decision was: (1) not supported by substantial evidence, (2) arbitrary and capricious, and (3) based on unlawful procedure. We disagree.
In view of the entire administrative record, the Board's decision to impose a disciplinary suspension on Petitioners was supported by substantial evidence. "Substantial evidence is that which a reasonable mind would regard as adequately supporting a particular conclusion." Walker v. N. Carolina Dep't of Human Res.,100 N.C.App. 498, 503, 397 S.E.2d 350, 354 (1990).
Here, with regard to Petitioner Marsico, the testimonies of Jay Robinson, Jason Bentzler, and Susan Hahn support the Board's finding that Marsico "failed to take the initiative to oversee Jason Bentzler and the other staff at Laney High School involved to ensure that proper procedures were followed." Both Robinson and Hahn testified Marsico had first-hand knowledge Hannah was an IEP student. Indeed, Hahn testified Marsico had attended at least one of Hannah's IEP meetings two months prior to the 13 December 2013 meeting. Bentzler testified he provided Marsico with a roster of all students with IEPs at the beginning of the school year. Robinson's testimony reveals the 13 December 2013 meeting was nota proper IEP meeting because of the missing parties. Nevertheless, Marsico failed to take any steps to assemble a proper IEP meeting, which must have included Ditz and Caroline Jackson. Instead, Marsico dropped two classes from Hannah's schedule and placed her in the HH program.
With regard to Petitioner Hand, the testimonies of Jay Robinson and Renee Ditz support the Board's findings that Hand "intentionally falsified notes from the December 13, 2013 meeting to make it look like an IEP meeting had taken place that day." The Board's findings here indicate they rejected Hand's testimony that he made the notes later to aid in the congregation of a future IEP meeting. In administrative hearings such as this, the Board "may accept or reject in whole or in part the testimony of any witness. While an administrative body must consider all of the evidence and may not disregard credible undisputed evidence, it is not required to accept particular evidence as true." State ex rel. Utils. Comm'n v. Duke Power Co.,305 N.C. 1, 21, 287 S.E.2d 786, 798 (1982) (citation omitted).
Instead, the record here supports the more reasonable inference that Hand made notes dated 13 December 2013 in attempt to make it look like an IEP meeting had been convened on that date. Robinson testified Hand knew Hannah had an IEP during the 13 December 2013 meeting. Hand's notes dated 13 December 2013 clearly list individuals as "present" who were not present at the meeting. It defies reason that Hand would list individuals as "Present" on a note for a meeting that would occur in the future, and simultaneously place a past date on that note. Further, Ditz testified Hand gave her those notes and told her that the notes were from a meeting that had already occurred. Acting on these notes, which indicated both Hannah and Caroline Jackson were present at the meeting, Ditz testified she filled out paperwork indicating an IEP meeting was held on 13 December 2013. For the aforementioned reasons, we hold the Superintendent presented the Board with sufficient evidence to support the conclusions stated in the Resolution.
Additionally, in view of the entire administrative record, the Board's decision was neither arbitrary, capricious, nor an abuse of discretion. Decisions of a school board may be reversed as arbitrary or capricious only if the decision is "patently in bad faith, or whimsical in the sense that [it] indicate[s] a lack of fair and careful consideration or fail[s] to indicate any course of reasoning and the exercise of judgment." Alexander v. Cumberland Cnty. Bd. of Educ.,171 N.C.App. 649, 660, 615 S.E.2d 408, 416 (2005) (internal quotation marks and citations omitted). Here, the Board heard testimony from nine witnesses, received thirty exhibits, and produced a Resolution that reflects careful consideration of the evidence. For the reasons stated above, the Board's findings here were carefully considered, and were neither arbitrary, capricious, nor an abuse of discretion.
C. Petitioners' Entitlement to a Hearing Before an Independent Officer
Lastly, Petitioners argue they were entitled to a hearing before an independent officer-as opposed to a hearing before the Board-pursuant to N.C. Gen.Stat. § 115C-325(f)(2). Petitioners contend the Board's failure to provide them a hearing before an independent officer constituted unlawful procedure. We review this issue de novo. SeeN.C. Gen.Stat. § 150B-51(c) (2104). N.C. Gen.Stat. § 115C-325(f)(2) provides:
Disciplinary Suspension Without Pay.-A career employee recommended for suspension without pay pursuant to G.S. 115C-325(a)(4a) may request a hearing before the board.If no request is made within 15 days, the superintendent may file his recommendation with the board. If, after considering the recommendation of the superintendent and the evidence adduced at the hearing if one is held, the board concludes that the grounds for the recommendation are true and substantiated by a preponderance of the evidence, the board, if it sees fit, may by resolution order such suspension.
N.C. Gen.Stat. § 115C-325(f)(2) (emphasis added). Furthermore, the statute provides, in cases where the disciplinary suspension is for a time period less than ten days, "[t]he procedures for a board hearingunder G.S. 115C-325(j2) shall apply[.]" N.G. Gen.Stat. § 115C-325(f)(2)(b) (emphasis added).
Petitioners argue although the statute provides for a hearing before the Board, the legislative intent of the statute was to provide for a hearing before an unbiased, impartial decision-maker. We reject this contention. The plain language of the statue reveals Petitioners are entitled to a hearing before an impartial hearing officer only where the Superintendent has recommended dismissal or demotion. SeeN.C. Gen.Stat. § 115C-325(h)(3). Here, the administrative record reveals the Board adhered to all procedures required by N.C. Gen.Stat. § 115C-325(j2). The Superintendent informed Petitioners in writing of their right to a hearing before the Board-which they invoked. Petitioners presented their case to the Board in closed session. Both the Superintendent and Petitioners made arguments on the record. Petitioners were given the opportunity to cross-examine all witnesses, testify on their own behalf, and introduce exhibits for the Board's consideration. We hold the Board's decision in this case was not made upon unlawful procedure.
V. Conclusion
For the foregoing reasons, we affirm the decision of the trial court upholding the Board's recommendation for Petitioners' disciplinary suspensions.
AFFIRMED.
Chief Judge McGEE and Judge DIETZ concur.
Report per Rule 30(e).
Opinion
Appeal by Petitioners from an order entered on 30 September 2014 by Judge W. Allen Cobb, Jr. in New Hanover County Superior Court. Heard in the Court of Appeals on 20 April 2015.

Hannah Jackson is a pseudonym used to protect the identity of the minor child.

Caroline Jackson is a pseudonym used to protect the identity of Ms. Jackson's minor daughter.

Bentzler was disciplined by the School Board for his actions regarding Hannah's HH placement. He did not appeal the disciplinary decision.

Ditz was disciplined by the School Board for her actions regarding Hannah's HH placement. She did not appeal the disciplinary action.

Petitioner Marsico's name is spelled incorrectly as "Marisco" throughout the Board's written findings.