NORTH CAROLINA DEPARTMENT OF REVENUE, Petitioner v.
BILL DAVIS RACING, Respondent

No. COA08-1387

(Filed 17 November 2009)

**1. Taxation— Tax Review Board decision—standard of review**

The trial court applied the wrong standard of review to a Tax Review Board decision where the question under the applicable standard was the legal correctness of the Tax Review Board's decision, but the court's findings went far beyond the findings made below and it was clear that the additional findings had a definite effect on the trial court's decision. N.C.G.S. § 150B-51(c) does not apply.

---

**2. Taxation— qualification for credits—findings not sufficient**

　　The trial court applied an incorrect substantive standard to the question of whether a respondent that was engaged in NASCAR activities was entitled to receive certain tax credits available to taxpayers engaging in manufacturing. The proper construction of the relevant statutory provision requires the use of a three step analysis for identifying the "primary business" or "primary activity" in which a particular entity is engaged, with detailed findings and conclusions at all stages. Here, the decisions of both the trial court and the Assistant Revenue Secretary were deficient and the matter was remanded for a new administrative hearing.

Appeal by respondent from order entered 9 July 2008 by Judge James E. Hardin, Jr., in Wake County Superior Court. Heard in the Court of Appeals 22 April 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Tenisha S. Jacobs for petitioner.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by William G. McNairy and Elizabeth V. LaFollette for respondent.*

ERVIN, Judge.

　　Bill Davis Racing (Respondent) appeals from an order entered 9 July 2008 reversing the Tax Review Board's Administrative Decision No. 508, and ordering that Respondent is "liable for the franchise tax, interest and penalties in the amount set forth in Final Decision Docket No. 06-217 entered by the [Assistant] Secretary [of Revenue] on 15 December 2006." We reverse and remand the trial court's order.

## Factual Background

　　Respondent Bill Davis Racing is a North Carolina S-Corporation that operates facilities in High Point and Thomasville. Respondent was engaged in several business activities and "employed approximately 133 employees and purchased machinery and equipment totaling more than $1.8 million for use at its North Carolina facilities" during the relevant time period.[1] For example, Respondent "owned and operated three NASCAR racing teams" during that time. In addition, Respondent "manufactured competitive cars, car bodies, and engines

---

1. For purposes of this appeal, the relevant time period is the 2000, 2001, and 2002 tax years.

at its North Carolina facilities for its own use in NASCAR racing events." Respondent earned total revenues during the relevant time period of $85,778,485.00, "the majority of which was from NASCAR sponsorships, winnings, and royalties."

In June 2000, Respondent became interested in obtaining tax credits under the William S. Lee Quality Jobs and Expansion Act (Lee Act). On 16 June 2000, Respondent sought and eventually obtained a change in its North American Industrial Classification System (NAICS) Code[2] "from 7948, a code that describes businesses engaged in the promotional and managerial aspects of automobile racing teams, to 3711, a code that relates to automobile manufacturing." After receiving the revised NAICS Code, Respondent submitted a "Participation Request" to the Secretary of Commerce seeking certi-fication of its eligibility to receive Lee Act tax credits for the 1999 tax year. On 9 August 2000, the Secretary of Commerce issued Respon-dent a "Certificate of Eligibility." Upon receipt of this Certificate of Eligibility, Respondent filed an amended 1999 corporate tax return in which it "report[ed] eligible tax credits of $49,500.00 for creating jobs and $10,570.00 for investing in machinery and equipment."

Respondent submitted similar "Participation Requests" to the Secretary of Commerce for 2000 and 2001 and received "Certificates of Eligibility" in response to both requests.[3] On its 2000 corporate tax return, Respondent claimed "the 1999 eligible credit amounts for creating jobs and for investing in machinery and equipment against income tax and allocated the income tax credits to its shareholders." In addition, Respondent "reported eligible tax credits of $184,500.00 for creating jobs and $46,280.00 for investing in machinery and equip-ment during 2000." Respondent claimed "the 2000 eligible credit amount for investing in machinery and equipment against its fran-chise tax[;] . . . claimed the first installment of that credit against its franchise tax liability[;]" and claimed "the 2000 eligible credit amount for creating jobs against its income tax and allocated the income tax credit to its shareholders" on its 2001 corporate return. Respondent "reported eligible tax credits of $36,000.00 for creating jobs and $54,245.00 for investing in machinery and equipment during 2001." On its 2002 corporate tax return, Respondent claimed "the 2001 eligible

2. The NAICS Code was originally referred to as the Standard Industrial Classification (SIC) Code.

3. Respondent did not submit a similar request to the Department of Com-merce for 2002 because the process for claiming Lee Act tax credits had been changed by that point.

credit amount for creating jobs against its franchise tax[;]" claimed "the first installment of that credit and the second installment of the 2000 credit for investing in machinery and equipment against its franchise tax liability[;]" and claimed the "2001 eligible credit amount for investing in machinery and equipment against its income tax and allocated the income tax credit to its shareholders."

After conducting an examination, the Petitioner Department of Revenue "determined that [Respondent] did not satisfy all of the general eligibility requirements needed to qualify for [Lee Act] credits and disallowed the installments of the credits for creating jobs and for investing in machinery and equipment claimed by [Respondent] against its franchise tax liability for tax years 2001 and 2002 and [disallowed] the credits for creating new jobs and investing in machinery and equipment that [Respondent] had allocated to its shareholders to claim against income tax liability for tax years 2000 through 2002." As a result, on 31 August 2004, Petitioner issued notices "assessing additional tax, interest, and negligence penalties" against Respondent and notices of assessments "against [Respondent's] shareholders for calendar years 2000 through 2002."[4]

On 29 September 2004, Respondent objected to the proposed franchise tax assessments and requested a hearing before the Secretary of Revenue. On 15 December 2006, Eugene J. Cella, Assistant Secretary of Revenue, entered a Final Decision. In his Final Decision, the Assistant Secretary determined that "whether an activity of a service[-]based company, such as [Respondent] is its primary business is best measured by the value of the company's receipts or revenues generated from that activity." The Assistant Secretary noted that the majority of Respondent's revenues were derived "from NASCAR sponsorships, winnings, and royalties," so that Respondent's "primary business is NASCAR racing," a business which was not eligible to receive credits under the Lee Act. After applying Petitioner's "penalty waiver policy," the Assistant Secretary determined to "waive one-half of the assessed negligence penalty upon payment of the total tax, interest, and one-half of the penalty imposed as a result of this Final Decision."

---

4. The Department and the affected shareholders have agreed to be bound by the outcome of Respondent's challenge to the assessment levied by the Department against Respondent.

On 16 March 2007, Respondent filed a Petition For Review of Final Decision with the Tax Review Board.[5] On 12 July 2007, the Tax Review Board entered an Administrative Decision in which it concluded that "the findings of fact made by the Assistant Secretary were not supported by competent evidence in the record, that based upon the findings of fact, the Assistant Secretary's conclusions of law were not fully supported by the findings of fact, and that the final decision of the Assistant Secretary was not supported by the conclusions of law." The Tax Review Board did not specify the exact findings of fact which it believed to lack adequate evidentiary support or state the reasons that it believed that the Assistant Secretary's factual findings failed to properly support his conclusions of law. The Tax Review Board reversed the Assistant Secretary's Final Decision.

On 7 November 2007, the Department filed a Petition for Judicial Review in Wake County Superior Court in which it requested the Superior Court to overturn the Tax Review Board's Administrative Decision. On 14 July 2008, the trial court entered an Order containing extensive findings of fact and conclusions of law in which it determined, among other things, that "Respondent's primary business was the owning and operating of race car teams;" that "Respondent's primary business was not an eligible business under the Lee Act for the Years at Issue,[6] and Respondent was therefore not entitled to any credits claimed under the Lee Act;" that "Respondent failed to meet its burden of proving it is eligible to claim Lee Act tax credits;" that "[t]he penalties were properly assessed by the Department in this matter;" that "the Secretary properly waived 50% of the assessed penalties under the good compliance provisions contained in the Department's penalty waiver policy;" that "[t]he findings of fact in the Final Decision are supported by the substantial evidence admissible

5. At the time that this matter was under consideration in the administrative process, the Tax Review Board provided a forum in which taxpayers could obtain review of Department decisions with which they disagreed. Effective 1 January 2008, the General Assembly substantially modified the procedures by which taxpayers were entitled to obtain review of adverse Department decisions by repealing the statutes that created and made reference to the Tax Review Board and enacting a new administrative review process that provided for an assessment by the Department, N.C. Gen. Stat. § 105-241.9; a request for departmental review by the taxpayer, N.C. Gen. Stat. § 105-241.11; a final determination by the Department, N.C. Gen. Stat. § 105-241.14; review through the use of the contested case provisions of Article 3 of the Administrative Procedure Act, N.C. Gen. Stat. § 105-241.15; and judicial review in the Superior Court of Wake County "in accordance with Article 4 of Chapter 150B of the General Statutes." N.C. Gen. Stat. § 105-241.16.

6. "Years at Issue" is a term used in the trial court's order to refer to the 2000 through 2002 tax years.

under N.C. Gen. Stat. §§ 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted;" that " '[t]he substantial rights of [the Department] have been prejudiced because the Administrative Decision of the Tax Review Board is unsupported by substantial admissible evidence in view of the entire record as submitted and, upon review of the whole record, the decision should be reversed;" that "[t]he substantial rights of the [Department] have been prejudiced because the Administrative Decision of the Tax Review Board is affected by error of law and, upon *de novo* review should be reversed;" and that the Department "is entitled to the relief sought in its Petition for Judicial Review." As a result, the trial court ordered that "the Tax Review Board's Administrative Decision No. 508 is **REVERSED** in its entirety; and that Respondent is liable for the franchise tax, interest and penalties in the amount set forth in Final Decision Docket No. 06-217 entered by the [Assistant] Secretary on 15 December 2006." Respondent noted an appeal to this Court from the trial court's decision.

## Standard of Review

[1] "This Court's review of 'a superior court order entered upon review of an administrative agency decision, . . . [involves a] two-fold task: (1) [to] determine whether the trial court exercised the appropriate scope of review and, if appropriate; (2) to decide whether the trial court did so properly." *In re NC IDEA*, —— N.C. App. ——, ——, 675 S.E.2d 88, 94-95 (2009) (quoting *County of Wake v. N.C. Dept. of Env't & Natural Res., et al.*, 155 N.C. App. 225, 233-34, 573 S.E.2d 572, 579 (2002)). As a result, the first issue that the Court is required to address is the extent to which the trial court applied the appropriate standard in reviewing the Tax Review Board's decision. After carefully reviewing the record and the applicable law, we conclude that the trial court failed to apply the correct standard of review.

The system that existed for reviewing disputes over tax liability issues at the time that the present controversy began provided that, "[i]f the Secretary discover[s] that any tax is due from a taxpayer, the Secretary must notify the taxpayer in writing of the kind and amount of tax due and of the Secretary's intent to assess the taxpayer for the tax." N.C. Gen. Stat. § 105-241.1(a) (2006). "A taxpayer who objects to a proposed assessment of tax is entitled to a hearing before the Secretary . . . ." N.C. Gen. Stat. § 105-241.1(c) (2006). "When a taxpayer files a timely request for a hearing, the Secretary must set the time and place at which the hearing will be conducted

and must notify the taxpayer of the designated time and place . . . ." N.C. Gen. Stat. § 105-241.1(c) (2006). "Within 90 days after the Secretary conducts a hearing on a proposed assessment, the Secretary must make a decision on the proposed assessment and notify the taxpayer of the decision," which "must assess the taxpayer for the amount of any tax the Secretary determined to be due." N.C. Gen. Stat. § 105-241.1(c) (2006).

"Without having to pay the tax or additional tax assessed by the Secretary, . . . any taxpayer may obtain from the Tax Review Board an administrative review with respect to the taxpayer's liability for the tax or additional tax assessed by the Secretary." N.C. Gen. Stat. § 105-241.2(a) (2005). "Within 90 days after conducting a hearing . . ., the [Tax Review] Board shall confirm, modify, reverse, reduce, or increase the assessment or decision of the Secretary . . . ." N.C. Gen. Stat. § 105-241.2(b2) (2005). "Any person who is aggrieved by the final decision in a contested case, and who has exhausted all administrative remedies made available to him by statute or agency rule, is entitled to judicial review of the decision under this Article, unless adequate procedure for judicial review is provided by another statute, in which case review shall be under such other statute." N.C. Gen. Stat. § 150B-43.[7] Thus, under the scheme for reviewing tax appeals in existence at the time that Respondent's tax liability was under consideration at the administrative level, the question before the trial court was the legal correctness of the Tax Review Board's decision to overturn the Assistant Secretary's Final Decision.

"According to well-established law, it is the responsibility of the administrative body, not the reviewing court, 'to determine the weight and sufficiency of the evidence and the credibility of the witnesses, to draw inferences from the facts, and to appraise conflicting and circumstantial evidence.'" NC IDEA, —— N.C. App. at ——, 675 S.E.2d at 94 (quoting Com'r of Ins. v. Rate Bureau, 300 N.C. 381, 406, 269 S.E.2d 547, 565 (1980)). For that reason, the trial court was subject to

---

7. According to the decision of the Supreme Court in In re Halifax Paper, 259 N.C. 589, 131 S.E.2d 441 (1963), a predecessor to current N.C. Gen. Stat. § 150B-143 allowed agencies to appeal from adverse administrative decisions. Unlike the statute at issue in Halifax Paper, however, N.C. Gen. Stat. § 150B-43 authorizes a request for judicial review by a "person who is aggrieved by the final decision in a contested case." Prior to the enactment of 2007 N.C. Sess. L. c. 491, s. 2, which repealed former N.C. Gen. Stat. § 150B(e)(6) effective 1 January 2008, the Department of Revenue was exempt from the contested case provisions of the Administrative Procedure Act. However, given that Respondent has not contested Petitioner's standing to seek review of the Tax Review Board's decision, we will assume that such authority exists under the statutory provisions quoted in the text.

certain well-defined limits in reviewing the Tax Review Board's decision. Pursuant to N.C. Gen. Stat. § 150B-51(b), the trial court was required to evaluate the Tax Review Board's decision under the following standard of review:

> Except as provided in subsection (c) of this section, in reviewing a final decision, the court may affirm the decision of the agency or remand the case to the agency or to the administrative law judge for further proceedings. It may also reverse or modify the agency's decision, or adopt the administrative law judge's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions;
>
> (2) In excess of statutory authority or jurisdiction of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;
>
> (5) Unsupported by substantial evidence admissible under [N.C. Gen. Stat. §§ 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
>
> (6) Arbitrary, capricious, or an abuse of discretion.

"The first four grounds for reversing or modifying an agency's decision—that the decision was 'in violation of constitutional provisions,' 'in excess of statutory authority or jurisdiction of the agency,' 'made upon unlawful procedure,' or 'affected by other error of law,' N.C. Gen. Stat. § 150B-51(b)(1)-(4)—are law-based inquiries." *NC IDEA,* —— N.C. App. at ——, 675 S.E.2d at 94 (citing *N.C. Dept. of Env't & Natural Res. v. Carroll,* 358 N.C. 649, 659, 599 S.E.2d 888, 894 (2004)). On the other hand, "[t]he final two grounds—that the decision was 'unsupported by substantial evidence . . . in view of the entire record' or 'arbitrary or capricious,' N.C. Gen. Stat. § 150B-51(b)(5),(6)—involve 'fact-based' inquiries." *Id.* "In cases appealed from administrative agencies, '[q]uestions of law receive *de novo* review,' whereas fact-intensive issues 'such as sufficiency of the evidence to support [an agency's] decision are reviewed under the whole-record test." *Id.* (quoting *In re Appeal of the Greens of Pine Glen Ltd. P'ship,* 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

The trial court made a number of explicit comments relevant to the issue of the scope of review that it employed in reviewing the Tax Review Board's Administrative Decision. At one point, the trial court stated that "[t]he findings of fact in the [Assistant Secretary's] Final Decision are supported by . . . substantial evidence admissible under N.C. Gen. Stat. §§ 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted." Furthermore, the trial court stated that "[t]he substantial rights of Petitioner have been prejudiced because the Administrative Decision of the Tax Review Board is unsupported by substantial admissible evidence in view of the entire record as submitted and, upon review of the whole record, the decision should be reversed." At another point, the trial court stated that "[t]he substantial rights of the Petitioner have been prejudiced because the Administrative Decision of the Tax Review Board is affected by error of law and, upon *de novo* review should be reversed." Finally, the trial court stated that "[t]he Final [Agency] Decision was not in violation of constitutional provisions, was not in excess of Petitioner's statutory authority or jurisdiction, was not affected by error in law, was not unsupported by substantial evidence in view of the entire record as submitted, and was not arbitrary or capricious, and upon review of the whole record and *de novo* review, the Final Decision should be sustained." Based upon this language, standing alone, we might be able to conclude that the trial court correctly applied a "substantial evidence" standard of review to "evidence-based" issues and a *de novo* standard of review to "law-based" issues. However, the fact that the trial court included extensive findings of fact in its order compels us to reach a different conclusion on the standard of review issue.

The mere existence of findings of fact in the trial court's order, without more, might not necessitate a conclusion that it applied an incorrect standard of review. For example, we might not be compelled to reach such a conclusion in the event that the trial court had simply recited or summarized the factual findings made by the administrative agency for ease of reading.[8] Unfortunately, however, the trial

---

8. Although both the Assistant Secretary and the trial court attempted to separately state findings of fact and conclusions of law, certain of the conclusions of law made by both the Assistant Secretary and the trial court are, in reality, findings of fact. Although this intermingling of findings of fact and conclusions of law has made review of the relevant orders more difficult, such an error is not, in and of itself, grounds for an award of appellate relief. *State ex rel. Utilities Com'm v. Eddleman*, 320 N.C. 344, 352, 358 S.E.2d 339, 346 (1987) (stating that "mislabeling . . . of [] findings and conclusions will not be [] fatal to [an] order" "[a]s long as 'each link in the chain of reasoning' appears in the . . . order") (quoting *Coble v. Coble*, 300 N.C. 708, 714, 268 S.E.2d 185, 190 (1980)).

court's order contains numerous findings of fact that do not appear in the Assistant Secretary's Final Decision.[9] For example, Finding of Fact No. 7 in the trial court's order states that "[t]he vast majority of revenue Respondent earned during the Years at Issue was from NASCAR sponsorships, winnings, and royalties." Although Finding of Fact No. 6 in the Assistant Secretary's Final Decision discussed the sources of Respondent's revenues, it merely stated that "the majority . . . was from NASCAR sponsorships, winnings, and royalties." Similarly, Finding of Fact No. 10 in the trial court's order states that, "[b]y letter dated 16 June 2000, Respondent instructed the Employment Security Commission to reclassify Respondent's [NAICS] code from 7948 to 3711." Although Finding of Fact No. 8 in the Assistant Secretary's Final Decision contains similar language, the word "instructed" is noticeably absent from the equivalent finding in the Final Decision. Along the same lines, Finding of Fact No. 15 in the trial court's order states that "NAICS is a self-identification system, under which each business decides for itself whether its NAICS code is accurate." There is no equivalent finding in the Final Decision. Finally, the trial court's order contains a number of findings discussing the preparation and contents of Respondent's federal income tax returns:

 28. George Kirtley, C.P.A. was listed as the paid preparer on both Respondent's United States Income Tax Returns for an S-Corporation and North Carolina S-Corporation Franchise and Income Tax Returns for each of the Years at Issue. Administrative Record TRB-7, Exhibit No. 1 through 6.

 29. Respondent listed "NASCAR Racing" as its "principal business activity" on its United States Income Tax Return for an S-Corporation for each of the Years at Issue. Administrative Record TRB-7, Exhibit No. 4 through 6.

 30. Respondent listed "Auto Racing" as its "principal product or service" on its United States Income Tax Return for an S-Corporation for each of the Years at Issue. *Id.*

 31. Respondent listed "711210," Spectator Sports, as its "business code" on its United States Income Tax Return for an S-Corporation [for] each of the Years at Issue. *Id.*

9. We have compared the trial court's findings to those contained in the Assistant Secretary's Final Decision because, as we have already noted, the Tax Review Board did not make findings of fact and because the trial court held that the Tax Review Board erred by concluding that the findings of fact contained in the Assistant Secretary's Final Decision lacked adequate evidentiary support.

32. The business code on a United States Income Tax Return for an S-Corporation is based on NAICS and is determined by the activity from which a company "derives the largest percentage of its total receipts." Administrative Record TRB-7, Exhibit No. 21, p. 29.

33. Respondent listed "NASCAR" as its "regular or principal trade or business in North Carolina" on its North Carolina S-Corporation Franchise and Income Tax Returns for each of the Years at Issue. Administrative Record TRB-7, Exhibit No. 1 through 3.

Nothing resembling these findings of fact appears in the Final Decision. As a result, the trial court's findings of fact range far beyond the findings made by the Assistant Secretary and address new information that does not appear to have provided any part of the basis for the Assistant Secretary's decision. Furthermore, given that the trial court made explicit reference to "Respondent's representations on its United States Income Tax Returns for the Years at Issue" in determining that Respondent's " 'principal product or service' was 'Auto Racing' and its 'principal business activity' was 'NASCAR Racing,' " it is clear that the additional findings of fact made by the trial court had a definite effect on the trial court's decision.

One could argue, in reliance on N.C. Gen. Stat. § 150B-51(c), that the trial court properly engaged in independent fact-finding given the somewhat unusual procedural posture of this case. Any such argument would be in error.

According to N.C. Gen. Stat. § 150B-51(c): ·

In reviewing a final decision in a contested case in which an administrative law judge made a decision, in accordance with [N.C. Gen. Stat. §] 150B-34(a), and the agency does not adopt the administrative law judge's decision, the court shall review the official record, *de novo*, and shall make findings of fact and conclusions of law. In reviewing the case, the court shall not give deference to any prior decision made in the case and shall not be bound by the findings of fact or the conclusions of law contained in the agency's final decision. The court shall determine whether the petitioner is entitled to the relief sought in the petition, based upon its review of the official record. The court reviewing a final decision under this subsection may adopt the administrative law judge's decision; may adopt, reverse, or mod-

ify the agency's decision; may remand the case to the agency for further explanations under [N.C. Gen. Stat.] § 150B-36(b1), 150B-36(b2), or 150B-36(b3), or reverse or modify the final decision for the agency's failure to provide the explanations; and may take any other action allowed by law.

Any such logic cannot be squared with the relevant provisions of Chapter 150B of the General Statutes for a number of different reasons.

First, "administrative law judge" is a defined term in Chapter 150B of the General Statutes. According to N.C. Gen. Stat. § 150B-2(1), an "administrative law judge" "means a person appointed under [N.C. Gen. Stat. §] 7A-752, 7A-753, or 7A-757." All three of these statutory provisions refer to individuals employed by or acting under the authority of the Office of Administrative Hearings. Since the Office of Administrative Hearings was not involved in the administrative process which led to the present proceeding, N.C. Gen. Stat. § 150B-51(c) simply does not apply to this case.

Secondly, N.C. Gen. Stat. § 150B-51(c) is, by its own terms, only applicable to situations "in which an administrative law judge made a decision, in accordance with [N.C. Gen. Stat. §] 150B-34(a), and the agency does not adopt the administrative law judge's decision." N.C. Gen. Stat. § 150B-34(a) provides that:

Except as provided in [N.C. Gen. Stat. § 150B-36(c), and subsection (c) of this section, in each contested case the administrative law judge shall make a decision that contains findings of fact and conclusions of law and return the decision to the agency for a final decision in accordance with [N.C. Gen. Stat. §] 150B-36. The administrative law judge shall decide the case based upon the preponderance of the evidence, giving due regard to the demonstrated knowledge and expertise of the agency with respect to facts and inferences within the specialized knowledge of the agency. All references in this Chapter to the administrative law judge's decision shall include orders entered pursuant to [N.C. Gen. Stat. §] 150B-36(c).

*Id.* This statutory provision has no relevance to the present case. First, as has already been noted, the version of N.C. Gen. Stat. § 150B-1(e)(6) in effect at the time that this case was undergoing administrative review specifically exempted the Department from "[t]he contested case provisions of" Chapter 150B of the General

Statutes. Secondly, the procedure contemplated by N.C. Gen. Stat. § 150B-34(a), under which a contested case is filed with the Office of Administrative Hearings; heard by an administrative law judge, who renders a decision subject to final agency review; and returned to the agency for a final decision, is simply not the process that was employed in this case. As a result, N.C. Gen. Stat. § 150B-51(c) does not apply in this situation for this reason as well.

Thus, for the reasons set forth above, nothing in Chapter 150B of the General Statutes absolved the trial court from the necessity for applying the usual standard of review applicable to appeals from administrative agencies in this case. As a result, "[a]ny determination that the trial court had the authority to disregard or supplement the administrative agency's factual determinations would be inconsistent with the applicable standard of review and rest upon a misapplication of governing law." *NC IDEA*, —— N.C. App. at ——, 675 S.E.2d at 98. By making additional findings of fact during the judicial review process, the trial court failed to adhere to this fundamental legal principle. Furthermore, given that the trial court's additional factual findings had an impact on its decision to reverse the Tax Review Board's Administrative Decision, the trial court's error clearly had an effect on the outcome in the court below.

However, "[t]he trial court's erroneous application of the standard of review does not automatically necessitate remand," *Carroll*, 358 N.C. at 666, 599 S.E.2d at 898, so that further proceedings on remand may be avoided if the "court can reasonably determine from the record whether [Petitioner's] asserted grounds for challenging the agency's final decision warrant reversal or modification of that decision under the applicable provisions of N.C. [Gen. Stat.] § 150B-51(b)." *Id.* Thus, the next issue that we must address is the extent, if any, to which we are able to resolve the fundamental issue between the parties on appeal, or whether this matter must be remanded for further proceedings in the trial court or the relevant administrative agency.

<u>Substantive Legal Issues</u>

**[2]** The fundamental substantive dispute between the parties is the extent, if any, to which Respondent was actually entitled to receive Lee Act tax credits during the relevant tax years. In order to appropriately resolve this issue, we are compelled to examine both the eligibility provisions of the Lee Act and the definition of "manufacturing" contained in the relevant statutory language.

At the time that it was initially enacted in 1998, N.C. Gen. Stat. § 105-129.2, which became effective for "taxable years beginning on or after" 1 January 1999, 1998 N.C. Sess. L. c. 55, s. 1, utilized the definition of "manufacturing" employed "in the North American Industry Classification System adopted by the United States Office of Management and Budget." Effective 4 August 1999, the General Assembly enacted N.C. Gen. Stat. § 105-129.2(11), 1999 N.C. Sess. L. c. 360, s. 2, which defined "manufacturing" so as to include "[i]ndustries in manufacturing sectors 31 through 33, as defined by NAICS, but not including quick printing or retail bakeries." The General Assembly revised the statutory definition of "manufacturing" effective 29 November 2001, 2001 N.C. Sess. L. c. 476, s. 1.(a), to provide that "[a] taxpayer is engaged in manufacturing if the taxpayer's primary business is an industry in manufacturing sectors 31 through 33, as defined by NAICS, but not including quick printing or retail bakeries." N.C. Gen. Stat. 105-129.2(16). Finally, "effective for taxable years beginning on or after" 1 January 2001, 2001 N.C. Sess. L. c. 476, s. 1.(b), the General Assembly rewrote N.C. Gen. Stat. § 105-129.2(16) to define "manufacturing" as "[a]n industry in manufacturing sectors 31 through 33, as defined by NAICS, but not including quick printing or retail bakeries." Thus, throughout the entire period relevant for purposes of this case, the extent to which a particular business was engaged in "manufacturing" hinged on whether it properly belonged within NAICS Sectors 31 through 33.

A similar series of changes was made to the eligibility provisions for "manufacturers," which have consistently been codified in N.C. Gen. Stat. § 105-129.4(a). Effective "for taxable years beginning on or after" 1 January 1999, 1998 N.C. Sess. L. c. 55, s.1, N.C. Gen. Stat. § 105-129.4(a)(4) made Lee Act credits available to taxpayers "engag[ing] in . . . [m]anufacturing." The same basic language remained in effect until the enactment of 2001 N.C. Sess. L. c. 476, s. 6.(a), which rewrote the relevant eligibility provisions "effective for taxable years beginning on or after" 1 January 2001 to provide that "[a] taxpayer is eligible for the credits allowed by this Article . . . if the primary business of the taxpayer is . . . [m]anufacturing." N.C. Gen. Stat. § 105-129.4(a)(3)a.

In light of these constantly changing statutory provisions, the parties agree that Respondent's eligibility for Lee Act credits in the 2001 and 2002 tax years depends upon whether "manufacturing" was its "primary business." However, Respondent contends that the "primary business" requirement does not apply to the 2000 tax year, rendering it eligible for Lee Act credits for that year as long as it merely

"engaged" in manufacturing. We are not, however, persuaded by either Respondent's logic or by the Department's counterargument, which asserts that the insertion of "primary business" into the definition of "manufacturing" was intended to "clarify the intent of the existing law," 2001 N.C. Sess. L. c. 471 s. 1.(c), and should be treated as retroactively applicable to the 2000 tax year for that reason.[10]

As the applicable statutory provisions existed for purposes of the 2000 tax year, Lee Act tax credits were available to taxpayers "engag[ing] . . . in manufacturing." N.C. Gen. Stat. § 105-129.4(a)(4). According to the relevant definitional language, an entity was involved in "manufacturing" during the 2000 tax year in the event that it was engaged in "manufacturing sectors 31 through 33, as defined by NAICS . . ." N.C. Gen. Stat. § 105-129.2(11). The fact that the definition of "manufacturing" in effect for purposes of the 2000 tax year hinges upon the NAICS guidelines and the fact that the NAICS guidelines provide that "[a]n establishment is classified to an industry when its primary activity meets the definition for that industry" necessitate a conclusion that "manufacturing" had to be the taxpayer's "primary activity" in order for that taxpayer to be eligible to receive Lee Act credits as a "manufacturer" for the 2000 tax year. As a result, the mere fact that Respondent engaged in "manufacturing" during 2000, without more, did not render it eligible to receive Lee Act credits for that tax year, making eligibility for Lee Act tax credits dependent upon whether "manufacturing" was the taxpayer's "primary activity" or "primary business" in each of the years in question.[11]

10. The language of 2001 N.C. Sess. L. c. 476, s. 1.(a), standing alone, would appear to work a change in law rather than a mere clarification of it. Given the well-established rule that statutes generally have only prospective effect, *State v. Green*, 350 N.C. 400, 404, 514 S.E.2d 724, 727 (1999), and the absence of any indication that the General Assembly intended to retroactively change existing law by enacting 2001 N.C. Sess. L. c. 476, s. 1.(a), we do not believe that this provision, standing alone, suffices to create a "primary business" requirement of the type contended for by the Department. However, for the reasons set forth in the text, we believe that other aspects of the relevant statutory language produce the result contended for by the Department.

11. The trial court and the Department place significant emphasis upon the fact that legislation, now codified in N.C. Gen. Stat. § 105-129.83, allowing racing teams to claim Lee Act tax credits regardless of the primary business in which such entities are engaged was enacted in 2006. Although the Department contends with considerable vigor, and the trial court agreed, that the enactment of this legislation demonstrates that Respondent was not eligible for Lee Act tax credits in prior years, the validity of this argument depends upon acceptance of the Department's position that Respondent was primarily engaged in NASCAR racing rather than manufacturing during the relevant tax years. Since this aspect of the Department's argument assumes the point at issue, the trial court erred to the extent that it placed any reliance on the enactment of N.C. Gen. Stat. § 105-129.83.

As a result, in order to resolve the ultimate issue in dispute between the parties, the Court must determine the test to be utilized in identifying Respondent's "primary business" or "primary activity," terms which we believe to be synonymous. On the one hand, the Department, with the support of the trial court, contends that a taxpayer's "primary business" or "primary activity" is best measured based upon the value of the revenues that the entity derives from that activity. On the other hand, Respondent, with the apparent support of the Tax Review Board, contends that a taxpayer's "primary business" or "primary activity" is best measured based on the percentage of the taxpayer's production costs and capital investment devoted to manufacturing-related activities. In order to resolve this dispute, we are required to analyze the relevant statutory language, making the ultimate issue before us one of statutory construction.

"The principal goal of statutory construction is to accomplish the legislative intent." *Lenox, Inc. v. Tolson*, 353 N.C. 659, 664, 548 S.E.2d 513, 517 (2001) (citing *Polaroid Corp. v. Offerman*, 349 N.C. 290, 297, 507 S.E.2d 284, 290 (1998) *cert. denied*, 526 U.S. 1098, 143 L. Ed. 2d 671 (1999)). "The best indicia of that intent are the language of the statute . . ., the spirit of the act and what the act seeks to accomplish." *Coastal Ready-Mix Concrete Co., Inc. v. Board of Commr's*, 299 N.C. 620, 629, 265 S.E.2d 379, 385, *reh'g denied*, 300 N.C. 562, 270 S.E.2d 106 (1980). "If a taxing statute is susceptible to two constructions, any uncertainty in the statute or legislative intent should be resolved in favor of the taxpayer." *Lenox*, 353 N.C. at 664, 548 S.E.2d at 517 (citing *Polaroid*, 349 N.C. at 297, 507 S.E.2d at 290).

As we have already noted, the relevant statutory provisions rely upon the NAICS guidelines in defining those manufacturers eligible for Lee Act tax credits. "Legislative purpose is first ascertained from the plain words of the statute." *Electric Supply Co. of Durham, Inc. v. Swain Elec. Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991). For that reason, it is logical to assume that the General Assembly intended that the NAICS system would inform efforts to identify entities eligible to receive Lee Act tax credits as well. In recognition of the fact that many business entities are engaged in multiple activities, the NAICS guidelines provide that:

> An establishment is classified to an industry when its primary activity meets the definition for that industry. Because establishments may perform more than one activity, it is necessary to determine procedures for identifying the primary activity of the establishment.

In most cases, if an establishment is engaged in more than one activity, the industry code is assigned based on the establishment's principal product or group of products produced or distributed, or services rendered. Ideally, the principal product or service should be determined by its relative share of current production costs and capital investment at the establishment. In practice, however, it is often necessary to use other variables such as revenue, shipments, or employment as proxies for measuring significance.

Although the quoted language is not completely free from ambiguity, it does express a preference for determining an entity's primary business activity on the basis of "the relative share of current production costs and capital investment." However, the fact that the use of "current production costs and capital investment" is "ideal" does not, according to the literal language of the NAICS guidelines, mean that this measurement can be appropriately used in all instances. Instead, the NAICS guidelines explicitly recognize that there are circumstances under which another approach might be preferable, although the guidelines do not provide much assistance in identifying the circumstances under which deviations from the "ideal" are appropriate.

The Department adopted its own guidelines in order to assist taxpayers in determining their own eligibility for Lee Act tax credits. "The interpretation of a statute given by the agency charged with carrying it out is entitled to great weight." *Frye Regional Medical Center v. Hunt*, 350 N.C. 39, 45, 510 S.E.2d 159, 163, *reh'g denied*, 350 N.C. 314, 534 S.E.2d (1999) (citing *High Rock Lake Ass'n, Inc. v. N.C. Envt'l. Mgmt. Comm'n.*, 51 N.C. App. 275, 279, 276 S.E.2d 472, 475 (1981)). In apparent recognition of the appropriateness of relying on the NAICS guidelines in applying the relevant statutory provisions, the Department's guidelines are similar, but not identical, to those provided by NAICS. According to the Department's guidelines for 2001:[12]

For most of the eligible business types, the law specifies that the taxpayer's primary business must be a designated business. To claim a credit as a taxpayer that provides air courier services or data processing services, for example, the provision of these services must be the primary business of the taxpayer and not just the taxpayer's primary activity at one establishment. Similarly, to claim a credit as a customer service center, the

12. Identical language appears in the Department's guidelines for 2002.

taxpayer's primary business must be telecommunications or financial services.

> The determination of whether an activity of a company is its primary business is based on the principal product or group of products the taxpayer produces or distributes or the principal services the taxpayer provides. The relative share of production costs and capital investment reflects the principal product or service. The activities at all the taxpayer's establishments are considered in determining the taxpayer's primary business.

As is the case with the NAICS guidelines, there is a clear focus in the Department's guidelines on the "relative share of production costs and capital investment." In addition, like the NAICS guidelines, the Department's guidelines do not make "relative share of production costs and capital investment" conclusive evidence of the taxpayer's "primary business" or "primary activity." The key word in the Department's guidelines is "reflects," which, as used here, means "to make manifest or apparent." *Merriam-Webster's Collegiate Dictionary* 1046 (11th ed. 2005). *Perkins v. Arkansas Trucking Services, Inc.*, 351 N.C. 634, 638, 528 S.E.2d 902, 904 (2000) (stating that, " '[n]othing else appearing, the Legislature is presumed to have used the words of a statute to convey their natural and ordinary meaning' " and that, "[i]n the absence of a contextual definition, courts may look to dictionaries to determine the ordinary meaning of words within a statute") (quoting *In re McLean Trucking Co.*, 281 N.C. 242, 252, 188 S.E.2d 452, 458 (1972)) (citing *Black v. Littlejohn*, 312 N.C. 626, 638, 325 S.E.2d 469, 478 (1985); *State v. Martin*, 7 N.C. App. 532, 533, 173 S.E.2d 47, 48 (1970)). The fact that certain criteria "manifest" or "make apparent" a disputed fact does not mean that they conclusively establish it; instead, it simply means that they strongly suggest that the disputed fact exists. As a result, by using the term "reflects," the Department indicated that this set of criteria was of considerable importance and should be used in making the required eligibility determination in the absence of a substantial reason to refrain from doing so.[13]

---

13. As an aside, we note that N.C. Gen. Stat. § 105-264 provides that, "[w]hen the Secretary interprets a law by adopting a rule or publishing a bulletin or directive on the law, the interpretation is a protection to the officers and taxpayers affected by the interpretation, and taxpayers are entitled to rely upon the interpretation." Although Respondent does not appear to have cited this statutory provision in addressing the assessment and penalty issues that have been raised in this case and although we express no opinion as to the manner in which those issues should be resolved given our belief that this case should be remanded for new findings and conclusions, we

**N.C. DEP'T OF REVENUE v. BILL DAVIS RACING**

[201 N.C. App. 35 (2009)]

As a result, both the NAICS and Department guidelines clearly indicate that the relevant statutory provisions require that serious consideration be given to the "relative share of current production costs and capital investment." However, the same guidelines indicate that those criteria should not be deemed conclusive evidence of an entity's "primary business" or "primary activity." As a result, we believe that the proper construction of the relevant statutory provision requires the use of a three step analysis for identifying the "primary business" or "primary activity" in which a particular entity is engaged. First, as applied to this case, the relative percentage of production costs and capital investment utilized in Respondent's manufacturing business compared to the same figures for its overall business should be determined. Secondly, an analysis of the extent to which Respondent's production costs and capital investment are manufacturing-related provides a proper basis for identifying Respondent's "primary business" or "primary activity" should be undertaken. Thirdly, in the event that the analyst concludes that the relative percentage of production costs and capital investment does not, given the particular facts of this case, provide an adequate basis for properly identifying Respondent's "primary business" or "primary activity," the analyst should examine all other relevant factors, determine which factors should be employed and the reasons that those factors should be utilized, and, based on the totality of the relevant circumstances, identify Respondent's "principal product or group of products." At all stages of this process, we believe that it will be necessary for the analyst to make detailed findings of fact and conclusions of law in order to ensure that a reviewing court will be able to determine the factual basis for and reasoning process that underlies the analyst's decision. Although this analysis will necessarily be very case- and fact-intensive, we do not believe that any other approach properly takes into consideration all of the factors apparently contemplated by the relevant statutory provisions.[14]

---

believe that N.C. Gen. Stat. § 105-264 might be pertinent to the issue of any liability that Respondent might have for assessments or penalties, depending on the outcome of this case on remand.

14. The parties engage in a vigorous debate over the relevance of Respondent's descriptions of its business on various federal and state tax returns. On the one hand, the Department contends that these descriptions are highly important admissions against interest by Respondent. On the other hand, Respondent argues that these statements are of no importance, since the criteria to be used in describing one's business on federal and state tax returns differ from the criteria to be used in determining one's eligibility for Lee Act tax credits. Although the trial court erred by relying on these descriptions in reaching its conclusion as to the nature of Respondent's business, since

When measured by this standard, it is clear that the trial court's order and the Assistant's Secretary's Final Decision are both deficient.[15] A careful examination of both the Assistant Secretary's Final Decision and the trial court's order establishes that neither considered the percentage of production costs or capital investment that the Respondent devoted to manufacturing in the 2000, 2001, and 2002 tax years in attempting to identify Respondent's "primary business" or "primary activity." Neither order contains findings of fact relating to those factors, despite the presence of record evidence relating to those issues. Instead, both the Assistant Secretary and the trial court treated the fact that the majority of Respondent's revenues were derived from winnings, sponsorships, and royalties associated with NASCAR racing and (at least in the case of the trial court) the fact that Respondent represented itself as primarily engaged in businesses related to NASCAR racing on its federal tax returns as conclusive on the "primary business" or "primary activity" issue without any explanation for their failure to address the evidence relating to the relative percentage of Respondent's production costs and capital investment devoted to manufacturing. As a result of the fact that evidence addressing the percentage of production costs and capital investment that Respondent devoted to manufacturing appeared in the record and was relevant to the "primary business" or "primary activity" issue, the Assistant Secretary and the trial court were required to take that information into account in deciding the case, so that the trial court erred by disregarding this issue without comment. The fact that neither the Assistant Secretary nor the trial court made any mention of this evidence establishes that the substantive legal standard that they employed in identifying Respondent's "primary business" or "primary activity" as NASCAR racing rather than manufacturing constituted error of law.

Thus, we conclude that the trial court and the Assistant Secretary erred by failing to consider Respondent's relative percentage of

there were no findings of fact made at the administrative level concerning this issue, we do not believe that we need to resolve any issues regarding the relevance of the descriptions of Respondent's business in these tax returns given the nature of the remand that we believe to be appropriate. In the event that the Department contends that the decriptions of Respondent's business in these returns ought to be considered on remand, it should seek to have findings made concerning what options were available to Respondent and the descriptions that Respondent actually utilized.

15. The Tax Review Board's failure to make findings and conclusions or to otherwise state the basis for its decision makes it difficult for us to comment on the merits of its decision.

production costs and capital investment devoted to manufacturing in identifying Respondent's "primary business" or "primary activity." On the other hand, for the reasons set forth above, we can likewise not accept the Respondent's argument that the record evidence conclusively establishes that "manufacturing" was its "primary business" or "primary activity" during the relevant time period and that this Court should order the Department to award the disputed tax credits. We reach this conclusion for several reasons. First, although the record contains evidence tending to show the relative percentage of Respondent's production costs and capital investment devoted to manufacturing compared to Respondent's overall production costs and capital investment, those figures are not embodied in any finding of fact. We do not believe that we are entitled to engage in appellate fact-finding of the type that is inherently required by Respondent's argument. Secondly, it appears to us that the Respondent's argument treats the relative production cost and capital investment figures revealed by the record as conclusive of, rather than merely highly relevant to, Respondent's eligibility for Lee Act tax credits. For the reasons stated above, we do not believe that this evidence necessarily has such conclusive effect. Finally, given that additional fact-finding appears to be necessary in order for a proper decision to be rendered, we believe that it is unfair to both the Department and Respondent to deprive them of the opportunity to be heard with respect to all relevant factual issues before a final decision is made. Thus, we conclude that neither party is entitled to prevail on the merits on appeal as a matter of law and that further administrative proceedings are necessary in order to ensure that Respondent's eligibility for the disputed tax credits is properly decided.

As a result, having determined that, in addition to applying an incorrect standard of review, the trial court also applied an incorrect substantive legal standard, that we are unable to resolve the substantive dispute between the parties on appeal, and that additional fact-finding appears to be necessary, we have no choice except to reverse the trial court's order and require further proceedings on remand. For that reason, we reverse the trial court's order and remand this case to the trial court for further remand to the Office of Administrative Hearings for a new hearing to be conducted under the procedures for administrative review of tax disputes which are now in effect. At this new hearing, appropriate factual findings should be made and an new administrative decision rendered in light of the applicable legal standard, which will then be submitted to the Department for a final

agency decision subject to judicial review in accordance with Chapter 150B of the General Statutes.[16]

Reversed and remanded.

Judges ELMORE and STROUD concur.

---

16. In view of the fact that this case should be remanded for a new administrative hearing, there is no need for us to address the matters at issue between the parties concerning the penalties that the Department has attempted to assess against Respondent.