IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-680

Filed 19 March 2024

Wake County, No. 22CVS8414

EDEALER SERVICES, LLC, Petitioner,

v.

NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, Respondent,

and

VANGUARD DIRECT, INC., Respondent-Intervenor.

Appeal by respondent-appellant and intervenor-appellant from order entered 5 March 2023 by Judge Keith O. Gregory in Wake County Superior Court. Heard in the Court of Appeals 6 February 2024.

*Attorney General Joshua H. Stein, by Assistant Attorney General Jonathan J. Evans and Special Deputy Attorney General Kathryne E. Hathcock, for respondent-appellant.*

*Stevens, Martin, Vaughn & Tadych, PLLC, by Michael J. Tadych and K. Matthew Vaughn, for respondent-intervenor-appellant.*

*Parker Poe Adams & Bernstein, LLP, by R. Bruce Thompson, II, Michael A. Goldsticker, and Catherine G. Clodfelter, for petitioner-appellee.*

FLOOD, Judge.

eDealer Servs. Inc. v. N.C. Dep't of Transp.

*Opinion of the Court*

The North Carolina Department of Transportation (the "NCDOT") and Vanguard Direct, Inc. appeal from the superior court's order and opinion vacating a contract the NCDOT had awarded to Vanguard. On appeal, the NCDOT and Vanguard argue the superior court erred by: (A) incorrectly applying the relevant standards of review by making independent findings of fact; and (B) reversing the Final Agency Decision and ordering the contract be awarded to eDealer Services, LLC instead of remanding to State Chief Information Officer Thomas Parish, IV (the "State CIO") for further findings. After careful review, we affirm.

## I. **Factual and Procedural Background**

In 2019, the NCDOT and the North Carolina Department of Information Technology (the "NCDIT") issued a Request for Proposal (the "RFP"), seeking proposals from bidders to be the vendor for North Carolina's ELT Solution. The ELT Solution is an electronic platform that tracks lien and title information between the NCDOT and the lienholder of a vehicle. The RFP used a "Best Value" procurement method that considered five criteria when evaluating bids:

> **Criterion A:** Substantial conformity to solicitation specifications and requirements
>
> **Criterion B:** Proposed project approach and schedule
>
> **Criterion C:** Corporate existence of similar size and scope and strength of references relevant to technology areas of specifications
>
> **Criterion D:** Explanations of the Statewide Technical Architecture Objectives

**Criterion E:** Price

eDealer and Vanguard were the only vendors to submit proposals in response to the RFP. These two proposals were evaluated by the appointed Evaluation Committee (the "Committee") and subject matter experts for the NCDIT and the NCDOT. In the review process, the Committee evaluated the strengths and weaknesses of eDealer's and Vanguard's proposals and then compared and contrasted the proposals. Thereafter, the Committee determined Vanguard's proposal was the most advantageous and offered the "best value" to the State.

In June 2020, the NCDOT awarded Vanguard the contract. On 26 June 2020, eDealer filed a bid protest with the NCDOT and the NCDIT, arguing the Committee improperly applied the procurement rules and policies and improperly evaluated the competing proposals. On 8 September 2020, the NCDOT sent a written response to eDealer, affirming its decision to award the contract to Vanguard.

On 22 October 2020, eDealer sent a letter to the State CIO and requested a hearing on the bid protest. The State CIO applied to the Office of Administrative Hearings (the "OAH") requesting it preside over the bid protest. On 6 November 2020, the OAH issued a Notice of Contested Case and Assignment. After ten months of pre-hearing filings, the matter came before an Administrative Law Judge (the "ALJ") on 8 through 10 and 17 September 2021.

At the conclusion of the hearing, the ALJ issued a Proposed Decision

recommending that the State CIO cancel the contract award to Vanguard and award the contract to eDealer. In its proposed decision, the ALJ concluded that the Committee failed to use proper procedures, and Vanguard failed to meet "multiple" RFP requirements, rendering its proposal incomplete.

On 8 June 2022, the State CIO reviewed the ALJ's Proposed Decision and issued a Final Agency Decision (the "Final Decision"), concluding eDealer failed to meet its burden of showing the award to Vanguard was an error, rejecting the ALJ's Proposed Decision, and affirming the award to Vanguard.

On 8 July 2022, eDealer filed a Petition for Judicial Review with Wake County Superior Court, requesting the award to Vanguard be canceled and the contract be awarded to eDealer. On 5 March 2023, the superior court issued its Order and Opinion on Petition for Judicial Review (the "Order"), concluding the Final Decision contained procedural errors, and the award to Vanguard was "arbitrary and capricious." In lieu of remanding to the State CIO for further findings, the superior court vacated the award to Vanguard and awarded the contract to eDealer. The superior court concluded remand would be "futile" as the "only reasonable decision, justified by the entire record, was that eDealer's proposal provided the 'Best Value' to the State."

The NCDOT and Vanguard filed separate notices of appeal.

## II. **Jurisdiction**

This Court has jurisdiction to review this appeal from a final judgment from a

superior court pursuant to N.C. Gen. Stat. § 7A-27(b) (2023).

### III. <u>Analysis</u>

The NCDOT and Vanguard present two issues on appeal: whether the superior court, sitting as an appellate court, erred by (A) failing to apply the proper standards of review and improperly making findings of fact and conclusions of law, leading to the vacatur of the award to Vanguard; and (B) exceeding its authority in ruling to reverse the Final Decision and order the contract be issued to eDealer, instead of remanding to the State CIO for further findings.

### A. Standards of Review

We first address the NCDOT and Vanguard's contention that the superior court misapplied the applicable standards of review. Specifically, the NCDOT and Vanguard argue the superior court did not apply the proper standards of review because it made new, independent factual findings when conducting its *de novo* and whole-record reviews. We disagree.

Under our review of a superior court's order entered upon review of an agency decision, we must first "determine whether the trial court exercised the appropriate scope of review and, if appropriate[,] . . . decide whether the trial court did so properly." *N.C. Dep't of Revenue v. Bill Davis Racing*, 201 N.C. App. 35, 40, 684 S.E.2d 914, 918 (2009) (alterations in original) (citation omitted and internal quotation marks omitted).

### 1. <u>Appropriate Scope of Review</u>

"The proper standard for the superior court's judicial review 'depends upon the particular issues presented on appeal.'" *Powell v. N.C. Crim. Just. Educ. and Training Standards Comm'n*, 165 N.C. App. 848, 851, 600 S.E.2d 56, 58 (2004) (citation omitted). "[Q]uestions of law receive *de novo* review, whereas fact-intensive issues such as sufficiency of the evidence to support [an agency's] decision are reviewed under the whole-record test." *N.C. Dep't of Env't and Nat. Res. v. Carroll*, 358 N.C. 649, 659, 599 S.E.2d 888, 894 (2004) (second alteration in original) (citation and internal quotation marks omitted). Thus, claims that a decision is "[m]ade upon unlawful procedure" receive *de novo* review whereas claims that a decision is "[u]nsupported by substantial evidence . . . or [is a]rbitrary or capricious" receive whole-record review. *Id.* at 658–59, 599 S.E.2d at 894.

In its request for judicial review, eDealer argued the Final Decision was made upon unlawful procedure. In its petition, eDealer alleged, *inter alia*, the Final Decision relied on the following procedural errors: (1) the Committee failed to employ a "Best Value" methodology as required by law; (2) Vanguard's proposal failed to satisfy all the RFP requirements, resulting in multiple material deficiencies; (3) the Committee impermissibly used clarifications to cure Vanguard's material deficiencies; and (4) the Committee failed to follow their own procedures when evaluating eDealer and Vanguard's strengths and weaknesses because they relied on two out of the five criteria.

Based on eDealer's assignment of the above procedural errors, the superior

eDealer Servs. Inc. v. N.C. Dep't of Transp.

*Opinion of the Court*

court correctly noted that it reviews claims of procedural errors under a *de novo* standard of review. *See Carroll*, 358 N.C. at 659, 599 S.E.2d at 894.

eDealer further argued that the Final Decision was unsupported by substantial evidence, and was arbitrary, capricious, and an abuse of discretion because the Committee failed to apply the "Best Value" methodology, which led to several errors in their analyses of Criterion A, Criterion B, and Criterion C. Again, the superior court correctly noted that its review of these claims was whole-record review. *See Carroll*, 358 N.C. at 659, 599 S.E.2d at 894.

The NCDOT and Vanguard concede that the superior court correctly summarized the standards of review in its Order, but argue that the Order demonstrates that the superior court impermissibly made new independent factual findings. The NCDOT specifically challenges paragraphs 11–15, 17–20, 22–29, 54(b), 57–62, and 66–67.

"According to well-established law, it is the responsibility of the administrative body, not the reviewing court, 'to determine the weight and sufficiency of the evidence and the credibility of the witnesses, to draw inferences from the facts, and to appraise conflicting and circumstantial evidence.'" *Bill Davis Racing*, 201 N.C. App. at 41, 684 S.E.2d at 919 (citation omitted). The superior court, therefore, acts as an appellate court when exercising judicial review over an agency decision. *See In re Denial of N.C. IDEA's Refund of Sales*, 196 N.C. App. 426, 432, 675 S.E.2d 88, 94 (2009). "It is the traditional function of appellate courts to review the decisions of

lower tribunals for errors of law or procedure, while generally deferring to the latter's 'unchallenged superiority' to act as finders of fact[.]" *Carroll*, 358 N.C. at 662, 599 S.E.2d at 896 (citations omitted).

Here, the NCDOT's argument that the Order includes independent findings of fact lacks merit. The "findings" challenged by the NCDOT are not independent findings of fact the superior court reached based on logical reasoning through the evidentiary facts. *See Weaver v. Dedmon*, 253 N.C. App. 622, 631, 801 S.E.2d 131, 138 (2017) ("Any determination reached through logical reasoning is properly classified as a finding of fact."). Instead, the superior court, through paragraphs 11–15, 17–20, and 22–29, detailed the factual history of the case based on the findings contained in the Final Decision and the Proposed Decision. *See Bill Davis Racing*, 201 N.C. App. at 43, 684 S.E.2d at 920 (reasoning the inclusion of findings of fact in the trial court's order may not "necessitate a conclusion that it applied an incorrect standard of review" if the trial court merely summarized the findings of fact made by the administrative agency).

The NCDOT argues that consideration of the Proposed Decision was in error because the superior court was bound to the *agency's record* and the findings made in the Final Decision. This, however, is an incorrect statement of law, and as eDealer points out, would lead to the "rubber stamping" of an agency's decision and "render judicial review hollow." Contrary to the NCDOT's arguments, "[i]n reviewing a final decision in a contested case, the [trial] court shall determine whether the petitioner

is entitled to the relief sought in the petition based upon its review of the final decision *and the official record*." N.C. Gen. Stat. § 150B-51(c) (2023) (emphasis added).

Thus, the superior court was within its authority to consider both the Proposed Decision and the Final Decision when reviewing the evidence and did not engage in independent fact finding. *See id.*

As for paragraphs 54(b), 57–62, and 66–67, these paragraphs were included in the superior court's *de novo* and whole-record reviews and can be more clearly analyzed under the second prong of our analysis—whether the superior court applied the standards of review correctly. *See Bill Davis Racing*, 201 N.C. App. at 40, 684 S.E.2d at 918.

### 2. Applications of Standards of Review

We next consider whether, in light of our standard of review, the superior court properly applied the *de novo* standard of review to the alleged procedural errors in the Final Decision, and whole-record review to the alleged substantive errors.

### a. *De Novo Review*

The NCDOT and Vanguard argue the superior court failed to properly apply the *de novo* standard of review because it failed to give due deference to the State CIO's expertise and did not adequately explain how or why the contemplated errors were made upon unlawful procedure or affected by an error of law. We disagree.

Under a *de novo* review, "the reviewing court consider[s] the matter anew[] and

freely substitutes its own judgment for the agency's." *Meza v. Div. Soc. Servs.*, 364 N.C. 61, 69, 692 S.E.2d 96, 102 (2010) (citation and internal quotation marks omitted). Even when considering the matter anew, a reviewing court "traditionally give[s] some deference to an agency's right to interpret the statute which it administers." *Armstrong v. N.C. State Bd. of Dental Exam'rs*, 129 N.C. App. 153, 159, 499 S.E.2d 462, 467 (1998). "[A]n agency's interpretation is not binding, [however,] [a]nd under no circumstances will the courts follow an administrative interpretation in direct conflict with the clear intent and purpose of the act under consideration." *High Rock Lake Partners, LLC v. N.C. Dep't of Transp.*, 366 N.C. 315, 319, 735 S.E.2d 300, 303 (2012) (citation and internal quotation marks omitted).

Here, the superior court included four specific instances that show the Committee failed to follow proper procedure for the procurement process. We review each instance in order.

(i) Best Value Methodology

First, the superior court concluded the Committee improperly applied the "Best Value" methodology because the members of the Committee were instructed that they would need to come to consensus as to each proposal's ratings before performing a direct comparison of the competing proposals.

Our General Statutes establish that "[t]he acquisition of information technology by the State of North Carolina shall be conducted using the Best Value procurement method." N.C. Gen. Stat. § 143-135.9(c) (2023). Under the North

eDealer Servs. Inc. v. N.C. Dep't of Transp.

*Opinion of the Court*

Carolina Administrative Code, this "Best Value" methodology requires the Committee to evaluate the "relative strengths, deficiencies, weaknesses, and risk supporting its award recommendation." 09 NCAC 06B .0302(1)(f) (2023).

The NCDOT argues that, although the superior court stated the language of the statute, it did not explain how the Committee failed to apply the Best Value method. This argument is unsupported by the face of the Order.

In paragraph 54(a) of the Order, the superior court stated:

> (a) The Evaluation Committee[e] did not properly apply the "Best Value" methodology. . . . The "Best Value" method requires an evaluation of each proposal's "relative strengths, deficiencies, weaknesses, and risks," and consists of "a comparative evaluation of technical merit and costs." 09 NCAC 06B .0302(1)(f) and (2). The Evaluation Committee's prohibition on comparing the two proposals while grading each Evaluation Criterion, Specification, and Requirement did not follow proper procedure for a "Best Value" procurement. The Final Decision notes that the proposals were eventually compared at the **end** of the evaluation process. By that time, however, the Evaluation Committee had already reached consensus final grades for each proposal. Those grades –made without the benefit of any direct comparison – formed the primary basis of the contract award.

The superior court likewise included a detailed explanation of what the "Best Value" method required and how the Committee failed to properly apply the method.

The superior court, therefore, properly applied the relevant law to the facts of this case and conducted a proper *de novo* review. *See Meza*, 364 N.C. at 69, 692 S.E.2d at 102.

(ii) <u>Mandatory Requirements</u>

Next, the superior court concluded the Committee should not have considered Vanguard's proposal as it failed to meet certain, mandatory RFP requirements, rendering the proposal incomplete and therefore invalid.

The superior court's conclusion reflects a proper application of the procurement requirements to the relevant facts. According to paragraph 54(b) of the Order:

> (b) Vanguard's proposal failed to meet certain threshold "Requirements," which, under NCDIT procurement rules, are mandatory and must be satisfied in order for a proposal to be considered. With respect to the missing PMP certification and missing deliverables, the Final Decision contends that these were not mandatory "Requirements." Final Decision at 16, ¶ 65. Yet these items were expressly labeled in the RFP under the category "Project Management **Requirements**." Pet'r Ex. 1 at 5 & 19. With respect to references, the RFP stated that "[o]ffers **must** provide three (3) current References for work of similar scope and size." Pet'r Ex. 1 at 37. Here, the Final Decision agrees that use of the word "must" denotes a non-waivable Requirement, but the Final Decision found that Vanguard's submission of any three references — regardless of scope or size —was sufficient. Final Decision at 8, ¶¶ 19, 80, 179. This is incorrect in that the plain terms of the RFP require the references to concern work of "similar scope and size."

Despite the specificity of the superior court's consideration of Vanguard's proposal in light of the RFP requisites, the NCDOT argues that the superior court failed to consider the definition of "requirements" as provided "within the DIT Procurement Policies and Procedures Manual in the record."

The Policies and Procedures Manual defines "requirements" as:

eDealer Servs. Inc. v. N.C. Dep't of Transp.

*Opinion of the Court*

> Features mandated by State legislation; regulatory attributes that must adhere to a type of governance, such as HIPAA or FERPA; statewide policies and procedures, such as Architecture and Security; and certain technical specifications defined by the procuring Agency. *Considered nonnegotiable.*

(emphasis added).

It is clear from the plain language of the definition that any and all requirements were nonnegotiable, and omission of any requirement would render a proposal incomplete. Further, the definition lends no support to the NCDOT's conclusory statement as to the superior court's failure to properly interpret the information in the record.

The NCDOT further argues that the superior court reached this conclusion despite the "Final Decision's direct citation to the information at issue." We interpret this to be an argument that Vanguard's clarifications cured these defects. This argument is more fully discussed in our consideration of the superior court's third illustration of the Final Decision's procedural errors, to which we next turn.

(iii) <u>Clarifications</u>

Third, the superior court concluded the "Committee improperly used clarifications to cure material deficiencies in Vanguard's Proposal."

Pursuant to the RFP, vendors were required to submit written offers that conformed with enumerated specifications. The Committee was required to evaluate these written proposals pursuant to the above described "Best Value" method. The

Committee was permitted to request clarifications; however, pursuant to law, "[c]larifications *shall not* be utilized to cure material deficiencies or to negotiate." 09 NCAC 06B .0307 (emphasis added).

In its third illustration, the superior court concluded the Committee's use of clarifications to cure material deficiencies in Vanguard's proposal was in violation of the applicable law and the procurement procedures. While the superior court failed to state in its analysis of the third illustration the legal support for why the Committee's reliance on clarifications to cure Vanguard's material deficiencies was unlawful, it did state in its factual background that the Committee was prohibited, pursuant to 09 NCAC 06B .0307, from using requests for clarification to cure material defects in the written proposal. The inclusion of this correctly stated rule demonstrates to this Court that the superior court conducted an appropriate *de novo* review when determining the Committee could not rely on clarifications to cure material defects. *See* 09 NCAC 06B .0307

(iv) <u>Evaluation Criteria</u>

Finally, the superior court concluded the Committee erred by focusing solely on Criterion A and Criterion E and "should have engaged in a more substantive, multi-factored analysis" which would have included consideration of the remaining three criteria.

The superior court correctly stated that the Final Decision, to justify the award to Vanguard, relied on Vanguard's eleven strengths and zero weaknesses, as

eDealer Servs. Inc. v. N.C. Dep't of Transp.

*Opinion of the Court*

compared to eDealer's four strengths and two weaknesses. These strengths and weaknesses, however, were solely based on Criteria A and E, which for reasons discussed below, was in error.

The superior court's conclusion that the Committee should have engaged in a more "substantive multi-factored analysis rather than focus on these few specifications" reflects a proper *de novo* review. Accordingly, a thorough review of the Order demonstrates that the superior court properly applied a *de novo* review and did so without engaging in independent fact finding. *See Bill Davis Racing*, 201 N.C. App. at 40, 684 S.E.2d at 918.

b. *Whole-Record Review*

The NCDOT and Vanguard argue the superior court incorrectly applied the whole-record review because it compared its review of the record against the Final Decision instead of determining whether the Final Decision was supported by substantial evidence. We disagree.

When applying the whole-record test, "the reviewing court may not substitute its judgment for the agency's as between two conflicting views, even though it could reasonably have reached a different result had it reviewed the matter *de novo*." *Meza*, 364 N.C. at 69–70, 692 S.E.2d at 102 (citation and internal quotation marks omitted). "Rather, a court must examine *all the record evidence*—that which detracts from the agency's findings and conclusions as well as that which tends to support them—to determine whether there is substantial evidence to justify the agency's decision."

eDealer Servs. Inc. v. N.C. Dep't of Transp.

*Opinion of the Court*

*Carroll*, 358 N.C. at 660, 599 S.E.2d at 895 (emphasis added) (citation omitted). "Substantial evidence is relevant evidence a reasonable mind might accept as adequate to support a conclusion." *Id.* at 660, 599 S.E.2d at 895 (citation and internal quotation marks omitted).

The NCDOT once again seems to argue, more specifically, that the superior court was bound by the evidence contained in the Final Decision and could not consider the Proposed Decision. As explained above, this is an incorrect interpretation of the law. A review of the Order shows the superior court correctly engaged in a whole-record review. The superior court concluded "the contract award to Vanguard was unsupported by substantial evidence in view of the entire record and [] it was arbitrary, capricious, and an abuse of discretion." We interpret this conclusion to be based on a review of whether the evidence in the record, including the Proposed Decision, supported the Final Decision, rather than based on a "new evaluation of the evidence[,]" as the NCDOT argues.

First, the superior court reasoned the lack of evidence supporting the Final Decision's award of the contract to Vanguard was "most apparent with respect to Criterion C[,] which concerned 'Corporate Experience of Similar Size and Scope and Strength of references Relevant or Material to Technology area(s) or Specifications.'" The superior court concluded the whole record did not support a conclusion that Vanguard and eDealer were equal with respect to this criterion because "no reasonable mind would find the parties to have the same degree of experience based

eDealer Servs. Inc. v. N.C. Dep't of Transp.

*Opinion of the Court*

on all the evidence presented." The superior court then proceeded to detail the evidence contained in the official record that shows eDealer had far more ELT experience than Vanguard. Contrary to the NCDOT and Vanguard's arguments, we conclude this was not the superior court conducting a "new evaluation of the evidence" but was instead the superior court determining that the Final Decision's conclusion that Vanguard was the stronger applicant with respect to Criterion C was not supported by substantial evidence—a correct application of whole-record review. *See Carroll*, 358 N.C. at 660, 599 S.E.2d at 895.

Second, the superior court reviewed whether the Final Decision's conclusion that Vanguard was the stronger applicant with respect to Criterion B—proposed project schedule—was supported by substantial evidence. In its proposal, Vanguard listed a proposed schedule of 381 days whereas eDealer's proposed schedule was forty-five days. Despite this great disparity in the proposed schedules, the Final Decision concluded it was reasonable to evaluate both proposals as the same with respect to Criterion B. The superior court concluded, and we agree, that this conclusion was wholly unsupported by the evidence as eDealer's schedule was more than eight times shorter than Vanguard's.

Lastly, the superior court concluded the Final Decision's award of the contract to Vanguard based on Vanguard's "strengths" with respect to Criterion A was unsupported for reasons discussed above. Based on the superior court's analysis, it concluded that the Final Decision could not "be reconciled, under any reasonable

interpretation of all the relevant evidence, with the fact that eDealer's proposal was superior with respect to Evaluation Criteria A, B, and C—the three most important Evaluation Criteria."  Perhaps most importantly, the superior court stated:

> In conducting its review, the [c]ourt has not independently weighed each of these Evaluation Criteria, requirements, and specifications just discussed.  Instead, after reviewing the entire record, the [c]ourt finds no discernible basis to justify the favorable grades that Vanguard received over eDealer for these specifications, such that the Final Decision was arbitrary and capricious.

This was not a hollow statement included by the superior court to justify its conclusion, as it is clear to this Court that this statement is supported by the evidence in the Record on Appeal.

Based on our review of the Order and the entire Record on Appeal, we conclude the superior court correctly applied the whole-record review and was justified in its ultimate conclusion that the Final Decision was unsupported by substantial evidence. *See Carroll*, 358 N.C. at 660, 599 S.E.2d at 895.

The superior court, therefore, appropriately applied *de novo* review to the procedural errors and whole-record review to the substantive errors, and did so correctly.  Thus, the superior court was justified in determining the award to Vanguard was arbitrary and capricious and an error of law.  *See Bill Davis Racing*, 201 N.C. App. at 40, 684 S.E.2d at 918.

## B. Disposition of the Order

The NCDOT and Vanguard's second assignment of error is that the superior

court should have remanded the case for further findings instead of vacating the award to Vanguard and awarding the contract to eDealer. We disagree.

Issues of statutory interpretation are questions of law reviewed *de novo*. *Armstrong*, 129 N.C. App. at 156, 499 S.E.2d at 466. The Administrative Procedure Act (the "APA") grants a reviewing court broad discretion to determine the scope of relief that should be afforded in response to an erroneous agency decision. When a reviewing court determines a decision is made on unlawful procedure or is arbitrary or capricious, "[t]he court reviewing a final decision may affirm the decision or remand the case for further proceedings. It may also reverse or modify the decision . . . ." N.C. Gen. Stat. § 150B-51(b) (2023).

Here, the superior court identified four illustrations of how the procurement process failed to follow proper procedure. The superior court then determined the Final Decision was unsupported by substantial evidence because it was arbitrary, capricious, and an abuse of discretion. Based on these identified errors, and the lack of evidence in the record to support the award to Vanguard, the superior court determined remand would be "futile," reversed the Final Decision, and awarded the contract to eDealer. The superior court was within its statutory authority to modify the order instead of remanding for further findings. *See* N.C. Gen. Stat. § 150B-51(b).

The NCDOT and Vanguard, however, argue the NCDIT has sole discretion to review an award of information technology contracts, and the superior court could not modify the award pursuant to N.C. Gen. Stat. § 150B-51(b). An acceptance of this

eDealer Servs. Inc. v. N.C. Dep't of Transp.

*Opinion of the Court*

argument would lead to the conclusion that the NCDIT is exempt from the APA, which would be an erroneous interpretation of the relevant statutes. The NCDOT and Vanguard also argue the controlling statute is clear and unambiguous. The NCDOT and Vanguard are correct the controlling statute is unambiguous, but they are incorrect as to which statute is controlling.

Under N.C. Gen. Stat. § 143B-1359(c), "[t]he State CIO is responsible for establishing policies and procedures for information technology procurement for State agencies. *Notwithstanding any other provisions of law*, the Department shall . . . approve information technology procurements . . . ." N.C. Gen. Stat. § 143B-1359(a) (2023) (emphasis added). The APA applies to *every agency,* except those the APA explicitly enumerates as being excepted from the APA, of which neither the NCDIT nor the NCDOT is included. *See* N.C. Gen. Stat. § 150B-1(c)(1)–(8). "Under our canons of statutory interpretation, where the language of a statute is clear, the courts must give the statute its plain meaning." *Armstrong*, 129 N.C. App. at 156, 499 S.E.2d at 466.

The language of the APA makes clear that it applies to *all agencies*, except those that fall under very specific exemptions. The statutory provisions pertaining to Information Technology contracts apply *"notwithstanding any other provisions of law."* *See* N.C. Gen. Stat. §143B-1359(a) (emphasis added). Based on this language, coupled with the General Assembly's omission of the NCDIT from its list of agencies

exempted from the APA, we are left with the conclusion that the APA is the controlling statutory scheme.

The superior court, therefore, had the authority under N.C. Gen. Stat. §150B-151(c) to modify the Final Decision, vacate the contract to Vanguard, and award the contract to eDealer. The superior court had no obligation to remand for further findings of fact. *See* N.C. Gen. Stat. §150B-151(c).

Having concluded the APA is the controlling statute, and the superior court had the authority to modify the Final Decision in lieu of remanding, we reach neither the NCDOT's nor Vanguard's remaining arguments.

## IV. <u>Conclusion</u>

We conclude the superior court applied the correct standards of review and did not make independent findings of fact, but rather utilized information contained in the official record to conclude the State CIO contract award to Vanguard was erroneous. We further conclude the superior court had the authority to modify the contract award instead of remanding for further fact finding.

AFFIRMED.

Chief Judge DILLON and Judge ZACHARY concur.